## MARY McNAB AND ANOTHER v. VICTOR J. WALLIN.[1]

### June 30, 1916.

### Nos. 19,778—(176).

**Landlord and tenant —duty of landlord over premises controlled by him.**

1. A loose unstable plank stool, or step, of crude make provided by the lessor to make the passage from the basement more convenient, the floor being 12 inches lower than the threshold of the door leading to the basement stairway, was not such a part of the structure or fixed conveniences of the leased premises that the lessor owed no duty to see that it was a reasonably safe contrivance for the use of the lessees— the lessor having retained control and care of the basement and passage

[1]Reported in 158 N. W. 623.

Note.—For liability of landlord for condition of portion of building remaining in his possession or part of premises not controlled by tenant, see notes in 14 L.R.A. 238; 23 L.R.A. 155; 48 L.R.A.(N.S.) 920.

thereto for the common use of the several lessees of the building. Its character, use and place where used were such that it cannot be said to have been a part of the premises within the rule that a lessor, though retaining control of parts of leased premises for the common use of different lessees, is not bound to make changes or alterations so that the parts under his control will be more safe for the lessees than at the time of letting.

**Striking out testimony of expert.**

2. There was no reversible error in refusing to strike out certain expert opinion evidence.

**Damages excessive.**

3. The damages to the husband resulting from the injuries to his wife are not supported by the evidence to the full amount awarded by the jury.

Two actions in the district court for Hennepin county to recover for personal injury to Mary McNab, the one in which she was plaintiff to recover $10,000, and the one in which David McNab, her husband, was plaintiff to recover $2,500. The cases were tried together before Hale, J., who when plaintiffs rested denied defendant's motion to dismiss the actions, and a jury which returned a verdict of $500 in favor of Mary McNab and one of $1,750 in favor of David McNab. Defendant's motions for judgment notwithstanding the verdict or for a new trial were denied. From the order in each case denying his motion for a new trial, defendant appealed. Affirmed as to Mary McNab and reversed conditionally as to David McNab.

*A. B. Darelius,* for appellant.

*Larrabee & Davies* and *Floyd B. Olson,* for respondent.

HOLT, J.

On July 23, 1914, David McNab and his wife Mary were, and for several months prior thereto had been, tenants in a six apartment three story flat building owned by defendant. There was a basement in which was a laundry and separate store rooms for the different tenants. The stairways, hallways and the portion of the building which the tenants used in common were under the care and control of the landlord, this defendant. From the hall on the first floor a stairway led down to the basement. There was a door at the foot of this stairway, but the threshold of the door was al-

most a foot higher than the cement floor of the basement. "Up against this threshold, and nearly flush therewith, but not fastened thereto or to the floor, was a stool or step made as follows: The legs at the end consisted of 2-inch planks, each a foot long, and 7½ inches high. On these legs two 2-inch planks were nailed. On the side which extended into the basement was a brace or board about an inch thick, and 2 inches in width, nailed onto these legs. And underneath these legs were cleats nailed on in such a way, that they extended on the side, where this brace was half inch further than the legs and on the side toward the threshold they did not come within 3 inches of the length of the legs. The whole step was 10 inches in height. The boards on top were 38 to 39 inches in length. These top plank so nailed together were 3 inches wider than the legs on which they were nailed, so that on one side one of the planks extended one inch further out and on the other plank 2 inches" (p. 219). Plaintiffs claim that the cleats under the feet were not there on July 23, 1914. When the step was in place a person stepping on the very front edge would be likely to tip it, because the top extended out farther than the base. If the cleats were there, as defendant contends, their being too short by 3 inches would give the steps a tendency to wabble when weight was placed on the edge nearest the wall. The evidence is plenary that it tipped or wabbled when persons stepped on it, and had caused falls. In the morning of the day named Mary McNab went to the laundry with a clothes basket, and, as she opened the door to the stairway at the basement and stepped down with her right foot on this step, she claims it tipped, causing her to fall and in falling the toe of her left shoe is said to have caught between the planks because one of them was loose at one end. A sprained ankle resulted, and other less patent injuries are said to have supervened; these latter are claimed to be more serious, perhaps, because they seem to be so difficult of diagnosis and treatment. Mary McNab sued defendant for damages for the injuries received, and her husband sued him for loss of services and medical expenses incurred in her treatment. The actions were tried together and the jury rendered a verdict in favor of the wife for $500 and one in favor of the husband for $1,750. Motions in the alternative for judgment notwithstanding the verdict or a new trial were made by defendant. The appeal is from the orders denying said motions.

The main contention of defendant is that he was entitled to directed verdicts. He concedes that he as landlord retained the care and control of the basement, the stairways, and halls leading to it, for the benefit of all the tenants in the building, and hence was under duty to use ordinary care to see that the same were kept in as reasonably safe condition for use as when the lease was entered. But he relies upon the rule that, as to tenants in apartment buildings wherein the landlord retains the control of halls, stairways and parts of the building, to be used in common by different tenants, there is no duty to alter or change the construction so as to make the use more safe or convenient—he performs his full duty when he uses due care to keep those parts of which he retains control in such condition as they were in, or purported to be in, at the time of the letting. And the claim is that this step was a part of the premises of which the tenant had the common use; it was provided as a part of the stairway or passage leading into the basement; any danger in its construction or use was obvious; and there was no hidden defect about it; hence, under the rule of such cases as Woods v. Naumkeag Steam Cotton Co. 134 Mass. 357, 45 Am. Rep. 344; Andrews v. Williamson, 193 Mass. 92, 78 N. E. 737, 118 Am. St. 452, and Siggins v. McGill, 72 N. J. Law, 263, 62 Atl. 411, 111 Am. St. 666, and the cases cited in note thereto in 3 L.R. A. (N.S.) 316, there can be no liability for any defect in the construction or design of this step.

The complaint herein declared both upon negligence in furnishing a step of that construction unfastened, and in permitting it to become out of repair. And the court instructed the jury that it was defendant's duty to use ordinary care to provide a reasonably safe entrance to the laundry, "and, as this step was used, it was his business to use reasonable care to see that this step was kept in a reasonably safe condition." There was testimony that, although Mrs. McNab had been a tenant nearly a year before the accident happened, she had been to the basement very seldom, and did not know that the step was unsafe or wabbly, and further that it is somewhat dark where it is placed, so that its defects were not readily ascertained by inspection. The jury might well find that the defect of construction in the step was not obvious. Persons might time and again pass over it without discovering its insecure footings, depending upon the fact that they happened to plant the foot not nearer one

edge than the other. It therefore does not come within the rule in the cases above cited. Furthermore, it is not clear that the step was part of the building over which the landlord retained control, so that it might be said that when the lease was made the parties contemplated no alteration or change in respect thereto. Its crude make and appearance indicate plainly that it was but a makeshift, and no part of the building as planned or constructed. The facts are somewhat similar to those in Ward v. Blouin, 210 Mass. 140, 96 N. E. 61. It was one of the movable conveniences upon the premises which the landlord could maintain, alter or altogether remove. Its use reduced the high step up from the basement floor by only two or three inches. However, if he did keep it there for use, his duty was to see that it did not constitute a hidden danger or pitfall. Considering the kind of crude makeshift this step was (its use, the scant light where it was placed, that it was not a part of the building as planned or constructed, and could be removed without materially inconveniencing the passage to the basement), the court was justified, we think, in submitting the question of defendant's negligence in respect to its use and condition to the jury. And there was no error in the manner of the submission. On the claim that defendant negligently permitted one of the planks in the step to become loose, there is evidence of actual notice to the defendant, or his janitor in charge of the building, and it was for the jury to say whether this want of repair caused or contributed to Mary McNab's fall.

Before Mrs. McNab testified, a doctor who had treated her was called to give an opinion as to the cause of her injuries. This was out of order, and upon the agreement that the answer might be stricken out, if the proof did not show that the hypothetical question, put to the doctor, correctly embodied the facts to be thereafter placed in evidence. The question contained a recital of the supposed facts to the effect that after plaintiff fell she, in an attempt to arise, again fell, and this time backwards. Mrs. McNab did not so testify, and the answer might well have been stricken, because all the facts included in the question had not been made to appear, but we are not able to say that reversible error was committed. The doctor's answer was that in his opinion, based upon the facts assumed in the question, the accident caused the injuries. Whether she fell once or twice was not likely to affect the answer. In the ques-

tion the one fall was not made out more severe than the other. Moreover, the motion was not made until both parties had rested, and in making it counsel did not direct attention to what facts included in the question were not proven. We do not think prejudicial error can be predicated upon the court's refusal to strike the opinion of the doctor from the record.

Our conclusion is that we cannot disturb the verdict in favor of Mary McNab. But we do not think the evidence justifies the damages awarded the husband. It stands to reason that when the jury gave only $500 to the wife, who suffered the injury and the pain, the loss to the husband of companionship and services should not be placed at a very high figure. The value of the services of the regular physicians who treated his wife was a modest amount. Neither plaintiff testified to what had been paid out or incurred for treatment, and the testimony of the different healers who had given rubs or massage as to the number of such treatments, their value or the amount paid therefor is very indefinite and unsatisfactory. Under the circumstances we think an award to the husband of more than $1,000 is without fair support upon this record.

The order is affirmed in the case of Mary McNab and in the case of David McNab the order denying defendant a new trial is reversed, with direction to the court below to grant a new trial, unless David McNab, within ten days after the remittitur goes down, files a writtent consent in the district court to reduce the verdict to the sum of $1,000.