# R. T. JOHNSTON v. MARGUERITE TOURANGEAU AND ANOTHER.[1]

March 8, 1935.

No. 30,286.

*Olof L. Bruce* and *E. L. Strom,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre,* for respondents.

[1]Reported in 259 N. W. 187.

636

JULIUS J. OLSON, JUSTICE.

In a negligence action plaintiff, at the conclusion of the testimony, was met with a directed verdict against him. He unsuccessfully moved for a new trial and appeals from that order.

Defendant Marguerite Tourangeau is the owner of a three-story apartment building in Minneapolis. The defendant E. J. Tourangeau is her son and was in charge of the building, which contains 28 rental units. The building is so divided that upon each floor the tenants occupying the front apartments have no means of access to or through the rear of the building without trespassing upon the rights of tenants occupying such flats or apartments in the rear. There is a glass door provided for egress to the back or porch stairway in case of fire. The regular entrance for all tenants on all the floors is by means of stairways located at the front of the building, suitable halls leading from the front stairways to the several apartments on each floor. There is no complaint made of lack of adequate lights in respect of the front stairway. The difficulty here relates to the so-called back or porch stairway. In speaking of this reference must be had to each floor, as the rear or porch stairway extends the full height of three stories. The building is a stone and brick structure. The back or porch stairway is so built as to be outside the brick building proper but is firmly attached thereto, and the roof of the building extends over and across the roof of the porch, the entire porch and stairway therein being of frame construction. At each end of the back porch and upon each floor thereof is a storeroom for brooms, mops, and the like, approximately eight by eight feet in size. The length of the open porch between the end storerooms is 29 feet. A railing three feet in height extends along the entire porch at the rear or alley side of the building. The place where the accident happened was at the exit of the first floor landing of the porch stairway. The floor of the porch is on the same level as the exit landing which is immediately adjacent thereto but is outside and beyond the porch itself. This stoop or landing is a space two feet ten inches by four feet seven inches, the narrow part leading to the steps which end upon the level of the alley. The height of the

floor of the stoop or landing is three feet above the level of the ground, and there âre four steps or treads from the floor landing to the ground. The two exposed sides of this stoop are protected by suitable railing. The only open space is from the landing to the steps leading down to the street or alley. Neither the porch stairway nor the outside stoop or landing were provided with lights.

Plaintiff for a period of some two weeks had been a tenant of an apartment toward the front end and upon the second floor of the building and was such at the time of accident. His regular and proper means of ingress and egress was the front stairway. Plaintiff freely concedes that this was well lighted and properly maintained. On the evening of September 29, 1932, plaintiff drove his car to the rear of the building and parked it there. It was then dark, but he had no difficulty reaching his apartment through the porch stairway although unlighted. In doing so he had to .go through the rooms occupied by the manager of the apartment building. That evening and until about 1:30 o'clock the next morning plaintiff and a friend were visiting in one of the rear apartments upon the second floor with one Mrs. McNeil, playing bridge. Having finished the bridge game, for the time being at least, plaintiff concluded that he wanted to change the location of his car from the place where it was parked. to the usual place where he kept it. Instead of going down the lighted stairway at the front of the building he took the rear stairway. He describes the situation as being "awfully dark." He could not even see what was in front of his feet as he walked down the porch stairway and had to light matches to guide his footsteps and held to the banister going down. Upon reaching the first-story porch floor he found that his matches were gone. The railing around the outside stoop or landing was hardly discernible. In groping for the same his feet were caught in some fashion by a broom handle so that he tripped and fell forward to the ground, a distance of about three feet, that being the distance from the stoop floor to the ground. He sustained injuries to his wrists, and other complications later followed. The negligence upon which liability is predicated is based upon two claims: (1) Failure on the part of the owner and operator of the apartment building to provide lights; and (2) negligently

leaving a broom upon the outside landing. Defendants pleaded the general issue, also contributory negligence on the part of plaintiff. As stated, when the parties rested, defendants' motions, made separately, for directed verdicts were granted.

Appellant has assigned several errors. In the view we take of this case it will be necessary to discuss only one, whether it appears as a matter of law that plaintiff was guilty of contributory negligence. We are fully cognizant of the rule that ordinarily the question of negligence or of contributory negligence lies within the province of the triers of fact. It is only when the evidence is conclusive that the court not only may but properly should take the thing in hand and dispose of it as a matter of law.

Contributory negligence is ordinarily defined as "want of ordinary or reasonable care on the part of a person injured by the negligence of another directly contributing to the injury, as a proximate cause thereof, without which the injury would not have occurred." 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7012. The underlying basis for the doctrine is as well settled as the principle of actionable negligence itself. The "justification of the doctrine is to be found in considerations of public policy—the prevention of accidents by requiring each member of the community to act up to the standard of due care set by the law." Our civilization is such that we are constantly "thrown into a multitude of complex and novel associations." It is for this reason that each man should not be regarded as his "brother's keeper." It is necessary that there be a "correlative duty of self-protection." It would be "manifestly unfair that the whole burden of protective caution should be thrown on one of the two parties, or that any man should be required to take better care for others than such persons are bound to take of themselves. The duty of care for others manifestly should be no higher than the duty of self-protection. No one can justly complain of another's negligence, which, but for his own wrongful interposition, would have been harmless." *Id.* § 7013.

Until the lawmaking power repeals the doctrine of contributory negligence it is up to the courts to enforce it as it stands. We are not at liberty to amend it in the interests of anyone. *Id.* § 7013a.

The undisputed facts in the instant case indicate that the stairway devoted and appropriate to the use of all tenants was well lighted. It is likewise beyond dispute that the rear porches and steps leading thereto were not lighted. Plaintiff on the evening immediately preceding the accident had used that particular route in entering his premises. There were no lights when he entered. It was dark, although not as "awfully dark" as when he left at 1:30 o'clock the next morning. He had a choice of two routes, one well lighted, the one which he knew he had a right to use and which was appropriate to that use. For his own purpose he chose the dark route. Plaintiff knew it was dark because, as he himself states, he could not even see his feet and therefore had to light matches as he proceeded down the stairway. He ceased lighting matches, not because light was unnecessary, but because his own supply had run out. At the moment of the accident he was groping for the railing upon the outside stoop. He had not yet reached it with his hand when he came into contact with the fallen broom and tripped. There is no testimony in the case that he saw such broom when he came into the building that way a few hours before. There is nothing in the testimony indicating from what tenant the broom came or how it happened to be lying or leaning in the position plaintiff claims. In his reply brief plaintiff states that he "was able to feel his way, and he would have reached the ground safely if it had not been for the carelessness and negligence of the respondents in permitting this broom to remain in the dangerous position it was in." Obviously then the broom could not have been in this position for any great length of time, nor is there any proof in the record that the defendants were responsible for the placing of the broom where the accident took place. If plaintiff was to take the risk of walking in darkness "feeling his way," he assumed the risk of encountering such a common and customarily used article as a broom. *Id.* § 7041a. This feature of defendants' claimed negligence is indeed weak and unsatisfactory. Be that as it may, the fact remains that plaintiff chose a route of darkness rather than one of light. He should not be heard to complain.

Many cases bearing upon the subject of contributory negligence

are available.  These will be found in the notes, 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 7012, 7013.

Cases from other jurisdictions upholding our views are numerous, but our attention has been called to two which we believe particularly applicable to the facts in the instant case.  See Parson v. Dughi, 12 N. J. Misc. 34, 169 A. 556; Hoffner v. Bergdoll, 309 Pa. 558, 164 A. 607.

The general rule respecting the landlord's duty to his tenant to light passages and stairways, absent statutory duty to light or assumption of duty under contract, is stated in 16 R. C. L. p. 1041, § 560, thus:

"It is generally held that the landlord, by reason of his duty to take reasonable care to have the common halls and stairways reasonably fit for use for the passage of the tenants, is under no obligation to furnish means for their safe use, and that he is therefore under no duty unless assumed by contract to furnish light at night, although such light may be necessary for safe use."

The order is affirmed.