# ROBERT GUSTAFSON v. ARTHUR L. ROBERTS HOTEL COMPANY.[1]

June 7, 1935.

No. 30,339.

*Wilson & Wilson,* for appellant.

*William Stradtmann* and *John E. Regan,* for respondent.

STONE, JUSTICE.

This action for personal injuries received by plaintiff while a guest in defendant's hotel resulted in a verdict for plaintiff for $6,000. Defendant appeals from the order denying its alternative motion for judgment notwithstanding or a new trial.

[1]Reported in 261 N. W. 447.

About eight o'clock in the evening of July 14, 1933, plaintiff, with several relatives, registered at the Saulpaugh Hotel in Mankato. After being shown their rooms, they went out and did not return until about 11:45. After reaching his room the second time, plaintiff went back into the hall to go to the toilet. He had to traverse a part of the hall which he had not previously used. Just outside and a few feet to the right of the door of his room there were three steps made necessary by a two-foot drop in floor level. The overhead, 24-hour light which ordinarily illuminated these steps had burned out. Plaintiff, stumbling down them in the dimly lighted corridor, suffered serious injury.

Defendant's liability is based upon negligence, as said by the complaint, in "permitting its premises to be in an unsafe and dangerous condition," failing "to keep the premises properly lighted," and "not properly warning guests of the dangerous condition of the premises." The assignments of error are directed at the sufficiency of the evidence to support the verdict; error in the charge to the jury; misconduct of counsel; and excessive damages.

■ We have a statute, 1 Mason Minn. St. 1927, § 5907, declaring that:

"Every hotel  *  *  *  shall be properly plumbed, lighted and ventilated, and shall be conducted in every department with strict regard to health, comfort and safety of the guest."

The charge was that defendant was liable for any injuries proximately caused by "violation of the statute in neglecting to properly light the premises and hallway in question." That may be considered but one of three theories upon which the case went to the jury. The second was that there could be recovery if the jury found that there had been lack of reasonable care to keep defendant's "premises in a condition of reasonable safety for the use of his guests," with a qualification that defendant was not the insurer of their personal safety. More precisely the instruction on this theory was that if the jury "should find that there was no failure on the part of the defendant to light the corridor in question by such methods and in such manner as the ordinary prudent person would

exercise under all the surrounding circumstances and conditions, then [now we come to the more specific and third ground of liability submitted], before the plaintiff could recover you must be convinced by a fair preponderance of the evidence that those in charge of the defendant's business at the time of the accident had knowledge of the fact the electric light bulb over the steps * * * had burned out or ceased to furnish light, or, in the absence of such actual knowledge that the circumstances were such as to form a reasonable inference that the light had been out so long that those in charge of the defendant's place of business should have, in the exercise of ordinary care, discovered that the light was out. Otherwise you must find for the defendant."

Without argument directed to the point, we do not consider how imperative was the statutory duty to light the steps. If the same rule is applicable as in cases under similar statutes intended for the safety of designated classes (*e. g.,* employer's liability and factory acts), the charge was too favorable to defendant.

The old classification of degrees of care into great, ordinary, and slight has been discarded. What is required is a degree of care commensurate to the risk; *i. e.,* that to be expected from an ordinarily prudent man in the same or similar circumstances. Peet v. Roth Hotel Co. 191 Minn. 151, 253 N. W. 546; 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 732. The danger, in the absence of light, might have been considered great. If the jury thought so, the conclusion that defendant owed plaintiff a high degree of care would follow.

As indicated, the charge is susceptible, from the legal standpoint, of submitting three bases of recovery to the jury. Hence there might be ground for reversal and a new trial if there were no evidence to sustain any one of them. But certainly under two—that based on the statute and that based on lack of care generally—the verdict is not without support. The pitfall was concealed by darkness. The statute was not complied with, and there was no guard whatever against the danger.

Defendant's excuse is that it did not know the light had burned out. Assuming that none of defendant's agents or servants knew

or had reason to know that it had, the fact remains that incandescent bulbs will not burn forever. Their life is limited in proportion to use. The one in question was a 24-hour light, kept burning night and day. It had no switch and could be turned out only by climbing a ladder and unscrewing the bulb. There is no evidence of any precaution to replace this bulb (or any other) before it burned out or was in danger of doing so. The jury could have inferred reasonably that defendant's practice was simply to wait for lights to burn out before replacing them as the need came to its knowledge through regular tours of inspection. The inference is reasonable that defendant permitted a situation to exist whereby, whenever the light went out, the steps might remain unlighted for at least two hours. If, the degree of danger considered, the jury concluded that that was less care than required by the risk, their conclusion has so much of reason in its support that it is not to be disturbed by an appellate tribunal.

There is some evidence that the light was out at about eight p. m. when plaintiff and other members of his family first entered the hotel. If the jury accepted that testimony as against some for defendant that an inspection had been made later in the evening and the light found burning, we cannot disturb their decision.

Nothing more need be said upon the merits of the case nor concerning the assignments of error directed to the refusal of such of defendant's requested instructions as were not covered by the charge.

■ It is argued for defendant that the verdict is so excessive in amount as to show passion and prejudice and that, in consequence, there should be a new trial, or at least a conditional reduction of the verdict. Plaintiff was 40 years old and a cook by trade but had not followed his trade for some years. More recently he had been engaged in operating a rooming house. There were special damages of near $500. There is no special evidence of permanent impairment of earning power. Plaintiff was hospitalized from July 15 to September 6. During that time he suffered much pain which doubtless did not cease all at once. The knee joint was bruised and sprained. There was a comminuted fracture of the right femur

just above the knee joint. The bone was not broken clear across, but a considerable fragment was detached. It healed with the fragment in such malapposition to the shaft of the femur that it projects at an angle of 45 degrees. There is permanent deformity. There is also ankylosis which fixes the stump below the knee at an "angulation" of about 45 degrees. There is medical testimony that plaintiff can no longer wear the artificial leg which for long before the accident he had been using, and that if the leg remains as it is he must get along with a "peg." To enable him again to use an artificial limb, one of two operations is said to be necessary. Either the knee joint must be operated on or there must be another amputation just above that joint. Even then he might not use an artificial limb with as much freedom of movement as with the old one. The award is high, but not so much so that, as against the refusal of the trial judge to interfere, we feel at liberty to do so.

Another claim is that counsel for plaintiff, Mr. Regan, was guilty of such misconduct, both while the evidence was coming in and during argument to the jury, that there should be a new trial on that account alone. It is enough that we cannot see abuse of discretion in refusing a new trial on that ground.

Order affirmed.