## ANNA PLAHN v. MASONIC HALL BUILDING ASSOCIATION.[1]

November 10, 1939.

No. 31,901.

[1]Reported in 288 N. W. 575.

*Edwin C. Kraus, George T. Havel,* and *Smith & Coughlin,* for appellant.

*Moonan & Moonan,* for respondent.

HILTON, JUSTICE.

Plaintiff sued to recover damages for personal injuries suffered from a fall in defendant's building. The trial court directed a verdict for defendant and denied plaintiff's motion to set it aside and grant a new trial. Plaintiff appeals from this order.

The decisive facts are as follows: Defendant, the Masonic Hall Building Association, owned a building in Faribault. It was vacant and the light and water were shut off. The building manager, Mr. Drehmel, granted permission to the Women's Circle of the First English Lutheran Church to use a part of the building formerly occupied by a beauty shop for the purpose of conducting a rummage sale. There was no rent charged. The most defendant could expect was the good will of the community. Plaintiff, a member of the Circle, was acting as a volunteer saleslady. During the course of the day she had occasion to seek a lavatory. In attempting to find one, the accident inflicting the injuries happened.

In the southeast corner of the portion of the building here concerned are two doors, the entrances to the lavatories. In the southwest corner is a door which opens outwardly. This is the entrance to the basement stairs. There are not any signs posted to distinguish the three doors although the one leading to the basement is of older construction.

The floor overlaps the first basement step a few inches. Along one side of the stairs the wall is constructed so that there is a ledge a few inches wide at the height between the first step and the flooring. There are not any windows in the immediate vicinity

of the staircase to furnish light. Consequently, it is poorly illuminated.

There is some dispute as to the extent of the permission granted. We are satisfied it did not include the right to use the basement. Mrs. Samuelson, who made the arrangements for the use of the building with Mr. Drehmel, testified that there was nothing said about the use of the lavatory or that defendant agreed to furnish such a facility.

The first question to decide is the nature of the relationship existing between defendant and plaintiff. While in some cases good will to the possessor might be an important element to consider, yet under the facts stated here we do not deem it of any substance. The permission was simply a gratuity. Plaintiff, as a member of the Circle, was on the premises by virtue of the owner's consent only. This is a fundamental characteristic of the licensor-licensee relation. Restatement, Torts, § 330. The relationship was too tenuous to make plaintiff any more than a gratuitous licensee.

Consideration of the duties of the licensor to a licensee will not resolve the issues for even assuming (without deciding) there was a duty owed by defendant to plaintiff; still plaintiff's contributory negligence precludes recovery as a matter of law. It would have been error not to direct a verdict for defendant.

Plaintiff was a stranger in the building and obviously was not familiar with it. This fact was fully appreciated by her, and she was aware that she did not have the slightest inkling as to the location of the lavatory. She testified that when she opened the door (which led to the basement) she "realized it was dark, I saw just the little light on that floor space on the west side, I stepped in and reached for the light on the wall." The basement door was the first door tried in the course of the search. Plaintiff either simply assumed it was the entrance to the lavatory (she testified, "I saw the entrance and I thought that was the toilet") or else was making an exploration of the building until the lavatory was found. In either event, under the circum-

stances plaintiff found herself, her conduct was unreasonable. Her own testimony satisfies us in this respect:

Q. "And you saw the floor as it approached the threshold and went two inches beyond, and then there was complete darkness?

A. "Well, I didn't look into the floor, because I opened it a little bit from the side. I didn't stand back of the door. I opened it from the side.

Q. "From the side?

A. "Yes. And then I stepped in.

Q. "And then you stepped in? And did you see the darkness when you stepped in?

A. "Well, I just noticed that little floor in front of me at the threshold and that little side that was on the west side.

Q. "Now the floor on the threshold extends, according to the testimony of your son, about three and a half inches from the door, is that correct?"

The witness testified it was approximately correct.

Q. "What was beyond that?

A. "I don't know.

Q. "Did you look?

A. "Well, that is all I could see.

Q. "Did you look beyond that?

A. "Well, there was nothing you could see. It was too dark, I guess."

Yet, in view of these circumstances, plaintiff entered the door from the side and apparently did not take advantage of the light which might have been available if the door were opened wide. She did not know whether or not there was a light switch but thought "there would have to be a light some place on the wall." Plaintiff claims, however, that she expected the floor to be below her. This belief is based solely on the fact that when the door was opened sideways a little light was cast on the ledge, which incidentally is narrow and appears to be a little below the level of the threshold. Plaintiff's belief seems to have been based on

a lack of proper observation particularly in view of the fact that she was in strange premises. Founding her course of conduct on this belief, she pushed forward in search of a light. But that is not all. When she stepped forward, actually she did not know into what she was stepping. "Q. So that at the time you stumbled you were in the act of stepping into the dark spot that you didn't know what it was, that is correct, isn't it?" In effect, plaintiff admitted she *did not actually know* what she was stepping into. True, without adequate justification she expected the floor, but the premises were unknown in nature to her, and she went ahead on the assumption or perhaps speculation that she had found the correct place.

She made no inquiry as to the lavatory's location. Instead she merely "saw the entrance and I thought that was the toilet. Q. And opened this door and stepped into the darkness? A. Yes, sir."

It is fanciful to say that this testimony raised a fact issue. Plaintiff's conduct on the whole indicates she appreciated the risks and that careful action was necessary. She first sought a light while still standing on the threshold. Plaintiff's action throughout indicates she realized that her lack of knowledge exposed her to danger. But she still failed to respond as a reasonable person would under the same circumstances.

This cannot be considered a situation where a person unsuspectingly steps into an area and suddenly finds himself plunging through space. Can it be held with reason that defendant should respond in damages to a person of normal intelligence who suffers injuries by stepping into a darkened area, the exact nature of which is unknown? By her own testimony, plaintiff did precisely this, although in our opinion ample grounds existed for her reasonably to suspect injury might be in the offing.

Manifestly, if defendant had warned plaintiff, assuming but not deciding there was such a duty, there is small likelihood that the injury would have occurred. But failure to perform this duty,

if such existed, does not render the defendant an insurer. The licensee must still act reasonably.

There was no error. The order appealed from is affirmed.

Order affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.

[1]Reported in 288 N. W. 225.