## CHARLES B. BEERY v. NORTHERN STATES POWER COMPANY AND ANOTHER.[1]

March 27, 1953.

No. 35,874.

[1]Reported in 57 N. W. (2d) 838.

*Charles H. Weyl,* for appellants.
*Robb, Robb & Van Eps,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendants' alternative motion for judgment notwithstanding the verdict or a new trial.

This action is brought by Charles B. Beery as special administrator of the estate of his deceased son, Frank Beery, under the statute for death by wrongful act (M. S. A. 573.02) to recover $10,000 damages for the benefit of next of kin.

On the afternoon of July 5, 1948, decedent was in the back yard of the home of his friend, Charles Scriver. Charles had been trimming some unsightly trees in the yard. Upon decedent's arrival the two young men decided to top a large poplar tree located next to the alley at the extreme rear end of the Scriver lot. The tree,

which was half dead, had grown up between three of defendants' primary or high-tension wires. These wires were fastened to the uppermost crossarm of defendants' power-line pole and were about 25 to 30 feet above the ground. They had a diameter about the size of the cap of a fountain pen and carried a potential of 4,000 volts between conductors and 2,400 volts from the wires to the ground or a neutral conductor. The wires, when new, were covered with a weather-proofing material which looked like insulation but which would not in fact serve as an insulator for more than 600 volts. This weatherproofing is used to guard against corrosion and is not for insulation. Similar transmission wires carrying primary current in rural areas are not covered with weatherproofing but are left bare since it is only in urban areas that the air contains materials conducive to corrosion. The weatherproofing on the wires at the time and at the scene of the accident had deteriorated to such an extent that in many spots the wires were completely bare. The tree which was to be topped extended above the wires about 20 feet so that it had an over-all height of approximately 50 feet. The trunk had grown between the wires in such a fashion that two of the wires were on the alley side of the trunk and one was on the side of the trunk of the Scriver property.

A ladder was placed against the trunk of the tree and decedent, *after agreeing with Charles to be careful of the wires,* climbed the ladder and shinnied up the tree to a height above the wires where he trimmed off all the branches on that part of the trunk above the wires. He next tied to the uppermost top of the trimmed part of the trunk a long rope which reached to the ground. Then at a level slightly below that of the wires he used a saw to cut through the trunk except for about one-half inch so that by use of the rope the top portion of the trunk could be pulled to the ground. The two young men realized that the top might fall onto the wire that was on the side of the trunk facing the Scriver lot and to eliminate this possibility decedent made a loop of a short cotton clothesline rope. He threw the looped end over the wire and put the other end of the rope through the loop so that it formed what might be termed a

running bowline knot around the wire. Then he pulled the wire up tight against the tree trunk at a level below the original position of the wire and tied the rope so as to hold the wire securely. He then descended to assist Charles in the actual topping. The two men pulled the top of the tree to the ground so that at its highest point the tree as cut off was slightly below the level of the wires.

Decedent then climbed the tree again, untied the rope that was holding the wire next to the trunk so as to allow the wire to return to its original position, and then reached up to remove the rope from the wire. While attempting to remove the rope, he was electrocuted. Charles, who was the only eyewitness, could not say how close decedent's hand had come to the wire but said that when he last looked decedent's hand was about three or four inches from the wire. Charles testified further that he heard a buzzing that caused him to look up and see "a ball of fire" that completely enveloped decedent's hand. One expert witness, who had had a great deal of experience with electric current, testified that 2,400 volts would not arc or jump through ordinary air more than a distance of one-eighth of an inch. Another expert witness indicated that the body would have to come within a fraction of an inch of the wire before the current would arc or jump. There was also expert testimony to the effect that in electrocution cases there usually will be burns where the current enters the body and sometimes where it leaves the body. On decedent's body there was *a burn on the back side of the left hand,* a two-inch burn on the under side of the left forearm, a three-inch burn on the right chest, and a two and one-half-inch burn on the left buttock. There was direct evidence that neither the fingers nor the palms of either of the decedent's hands were burned.

Decedent was a well-educated young man. At the time of his death he had completed work at the University of Minnesota toward a mechanical engineering degree with the exception of two-thirds of a school year. His training at the University included one quarter's work in a three-quarter survey course in electric circuits. The course dealt with various subject matter including lighting

circuits, magnetic circuits, generators, motors, and transformers used, and the difference between primary and secondary current. The decedent had also assisted his brother in the performance of work on the electric circuits of various apartment buildings owned by their father in Minneapolis.

After a verdict for the plaintiff in the amount of $8,500, the defendants moved for judgment notwithstanding the verdict or a new trial. Upon this appeal by defendants from the order denying their motion, it is not necessary to consider the issue of defendants' negligence since decedent, under all the circumstances, was guilty of contributory negligence as a matter of law. In determining whether an adult person reasonably ought to recognize that his conduct in exposing himself to electricity involves a danger of injury, he is assumed to be a reasonable man possessed of such knowledge of the dangers of electric energy as is common among laymen at the time and in the community.[2] Judicial notice may be taken of the fact that we are living in an age in which the use of electricity has become so general and widespread in practically every community that the danger of electric energy is a matter of common knowledge among persons of ordinary intelligence and experience.[3] In applying these principles to the evidence, it is of course elementary that a motion for judgment notwithstanding the verdict should be granted only in those unequivocal cases where, *in the light of the evidence as a whole,* it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the *entire* evidence.[4] In analyzing the evidence it is to be borne in mind that contributory negligence on the part of the decedent is not established merely by showing that he worked in a

[2]Peterson v. Minnesota Power & Light Co. 206 Minn. 268, 288 N. W. 588, and authorities cited therein; see, Restatement, Torts, § 290(a), *comment d;* 18 Am. Jur., Electricity, §§ 75, 76.

[3]See, Peterson v. Minnesota Power & Light Co. *supra;* 23 Minn. L. Rev. 643.

[4]Pattock v. St. Cloud Public Service Co. 152 Minn. 69, 187 N. W. 969; Peterson v. Minnesota Power & Light Co. *supra;* Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637.

place of known danger but it also must be shown that his conduct was negligent in the face of the danger.[5] In other words, the basic test is whether the decedent acted as a reasonably prudent man under the circumstances.

Decedent was a bright young man who by reason of his education and practical experience was reasonably far more cognizant of the dangers of high-voltage electricity than the ordinary layman. The size of the wires and their location on power-line poles 25 or 30 feet above the ground could not reasonably have failed to convey to him a warning as to the presence of primary or high-tension current. What is more, he was warned by his companion to be careful. In the face of known danger he *deliberately and recklessly* reached with his bare hand to remove from the high-tension wire a short piece of clothesline which he had used to tie the wire to the tree. There was a small knot about three inches down the shank of the rope, but the only reasonable inference is that when the rope was pulled to bring the wire next to the tree trunk, the bight formed by the rope passed over the knot and pulled tight and snug against the wire. It cannot be said that a reasonably prudent person would reach with his bare hand to untie and remove such a rope from a high-voltage wire. In fact, it was unreasonable in the first place to use knots or in any manner to tie the rope to the wire when the purpose in view could have been as well accomplished by merely throwing the rope over the wire and then drawing the wire to the tree trunk by pulling on the two ends. If that had been done, the rope could have been removed from the wire without danger. Aside from the precaution that might have been taken in the first place, once the rope was tied to the wire, only a reckless indifference to an obvious danger could have prompted decedent's effort to salvage it.

Decedent's reckless conduct cannot be justified on the theory that he relied upon the wire's weatherproof coating as being an adequate insulation because, if for no other reason, the wire coating in many places had deteriorated and peeled off so as to leave the wire bare.

[5]Theisen v. Minnesota Power & Light Co. 200 Minn. 515, 274 N. W. 617.

The bare condition of the wire must have been obvious at a glance. Testimony shows that the wire's 2,400 volts would not jump or arc through ordinary air more than one-eighth of an inch. Decedent's conduct cannot be justified on the theory that he did not know the wire's voltage or that the current would jump or arc one-eighth of an inch. Clearly no reasonably prudent person—at least while occupying a position as precarious and unsteady as a perch in a tree or on a ladder leaning against a tree—will bring his bare hand within such close proximity of any high-voltage wire line even though the exact voltage or the arcing distance is not known. We hold that decedent was guilty of contributory negligence as a matter of law.

The order of the trial court is reversed.

Reversed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.