# LEO COENEN v. BUCKMAN BUILDING CORPORATION.

153 N. W. (2d) 329.

September 29, 1967—No. 40,517.

*Gordon Rosenmeier* and *John E. Simonett,* for appellant.
*George P. Wetzel,* for respondent.

NELSON, JUSTICE.

Appeal from a judgment of the district court entered pursuant to a jury verdict in favor of plaintiff. Defendant seeks reversal and entry of judgment in its favor. The appeal does not make application for a new trial.

The accident which resulted in this action occurred when plaintiff stepped into an unlighted furnace pit located in the basement of de-

fendant's building. Since defendant claims that plaintiff was guilty of contributory negligence as a matter of law and that plaintiff, having awareness of the circumstances existing prior to and at the time of the accident, assumed the risk thereof, the events leading up to the mishap are particularly significant.

If all conflicts in the evidence are resolved in favor of the prevailing party below, the facts appear to be as follows: Plaintiff, Leo Coenen, age 62, was, on the date of the accident here involved, self-employed, operating the Falls Sewing Center in the Buckman Building in Little Falls, Minnesota, where he had been a tenant of the defendant building corporation since June 1, 1964. The record indicates that at approximately 11:15 a. m. on January 28, 1965, while plaintiff was in his shop repairing a sewing machine which he had promised a patron would be finished by noon of that day, an electrical fuse blew out, leaving him without light and power and, therefore, unable to complete his work. There being no fuse box in the shop which he occupied, plaintiff walked to the President's Cafe, another first-floor tenant in defendant's building. Plaintiff inquired of the cafe proprietor, E. J. Newman, a tenant for 12 years, the location of the fuse box in the building. While there appears to be some conflict in the testimony as to whether Newman first suggested that plaintiff look for the fuse box in the hotel upstairs, the fact remains that plaintiff eventually was told by Newman that it might be located in the basement.

Newman testified that he told plaintiff that "it was rough down there" and that it was dark and like a dungeon. Newman further claims that he told plaintiff that the boiler was down there and there was a pit in front of the boiler. Plaintiff, however, testified that Newman told him only that "it was rough down there" and denied the other statements Newman claims to have made.

The record also indicates that Newman told plaintiff that he might find the fuse box under the place plaintiff occupied as the sewing center and that if he went down to the basement and explored along the area underneath his business place he might find it there. Newman did not want to go into the basement because of a bad leg and asked one of the women working for him in the cafe, a Mrs. Smith, the cook's helper, to

accompany plaintiff into the basement. She took along a flashlight and they proceeded into the basement to look for the fuse box. Newman told them that they should look "behind the cage and on the northwest corner and near the boiler." While Newman states that he told plaintiff about the location of the boiler and the pit connected with it, plaintiff denies that any such statement was made. Mrs. Smith testified that she had been in the basement on several occasions but never near the boiler and that she was not aware of any pit near the furnace. In any event, it was for the jury to determine the conflicts in the evidence.

To get to the basement, Mrs. Smith and plaintiff had to walk through the kitchen of the cafe, along a corridor, and then down the basement steps. Following this route, Mrs. Smith, flashlight in hand, led plaintiff down the basement steps. The stairway was illuminated by light, as was a room at the bottom and the east corridor. Once in the basement, pursuant to Newman's suggestion, they turned right down the east corridor which was cluttered with crates and supplies belonging to the cafe. The ceiling lights were on and plaintiff and Mrs. Smith had no difficulty finding their way along this path.

Having found no fuse box at the end of this hallway (it being directly under the sewing center), they turned around, took a few steps, turned right, and proceeded westerly into what has been termed the "middle room." This room was dark. Although there was a light switch at the entrance, which activated all of the lights in the middle room and boiler room, neither was aware of that fact. Instead, Mrs. Smith saw a drop cord from a ceiling light halfway into the room, and, stepping forward, she pulled the cord but the light did not come on. Mrs. Smith again shone the flashlight into the darkness. By this time it was pitch dark, save for the light produced from Mrs. Smith's two-celled flashlight. Mrs. Smith and plaintiff entered the boiler room proper. They tried a light switch and light cord with no results. They continued walking slowly when, from the beam of her flashlight, she noticed another drop cord from the ceiling. With plaintiff remaining still, she walked northwesterly toward this second drop cord, noticing on her left the edge of the furnace pit. She pulled the cord but that light did not work. She said nothing about the pit to plaintiff.

After returning to where plaintiff was standing in the dark, Mrs. Smith shone her flashlight about the area. Shortly thereafter they noticed a fuse box on a pillar by the southeast corner of the boiler pit. Together they walked to the fuse box, plaintiff staying close behind Mrs. Smith who still carried the flashlight. One of the fuse boxes was marked, "Sewing Center." Having found an extra fuse on the top of the box, plaintiff changed the fuse, still unaware that the pit was only some 28 inches behind him. None of the lights went on with the changing of the fuse, so Mrs. Smith returned to the two drop cords that they had encountered on their search for the fuse box. Again neither of these lights worked. As she walked back to where plaintiff was standing, plaintiff apparently saw the second drop cord Mrs. Smith had previously tried. He took a few steps northwesterly toward the cord, and in doing so, stepped or fell into the unguarded furnace pit sustaining a fracture of his left foot.

Further testimony indicates that a part-time custodian of defendant's building had been in the furnace room the previous evening and that some of the lights around the furnace were at that time in working order.

An issue, apparently not in dispute in this appeal, was whether plaintiff was an invitee or a licensee, although he was in fact a tenant. The trial court instructed the jury on the different duties owed to a licensee and to an invitee by a possessor of land as contrasted to the duties owed to a tenant. Although plaintiff objected to such instruction, it was apparently given to the jury because plaintiff, it was claimed, had not leased any portion of the basement although there is evidence in the record that he was given to understand that he could store blinds left in his shop in the basement.

The jury returned a $5,000 verdict for plaintiff. Plaintiff moved for a new trial on damages only. Defendant moved for judgment notwithstanding the verdict. All motions were denied below.

■ Our concern must be with what the record shows as to the evidence relative to negligence, contributory negligence, and assumption of risk, and the rules applicable to the situation presented by the record. Since the jury returned a verdict for plaintiff, this court must recognize

the well-established rule that the testimony must be considered in the light most favorable to the prevailing party. Thus, the only question on this appeal is whether there is sufficient competent evidence reasonably tending to support and sustain the jury's findings. See, Donovan v. Dixon, 261 Minn. 455, 113 N. W. (2d) 432.

The criterion for whether a motion for judgment notwithstanding the verdict should be granted was explicitly stated in Beery v. Northern States Power Co. 239 Minn. 48, 52, 57 N. W. (2d) 838, 841:

"\* \* \* [I]t is of course elementary that a motion for judgment notwithstanding the verdict should be granted only in those unequivocal cases where, *in the light of the evidence as a whole,* it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the *entire* evidence."

■ Defendant did not object to the instructions given and made no motion for a new trial because of any error in the instructions. See, Rule 51, Rules of Civil Procedure. Under such circumstances, the trial court's charge, even if erroneous, becomes the law of the case, and whether the verdict is sustained by the evidence is then determined by application of the rules of law laid down in the charge. See, Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354, and cases cited therein. Where a defeated party rests its motion for judgment notwithstanding the verdict without asking for a new trial, errors at the trial, whether in the rulings or in the instructions to the jury, cannot be reviewed or considered. The only question for consideration is whether it clearly appears from the record that the verdict should not stand. See, Krueger v. Knutson, 261 Minn. 144, 111 N. W. (2d) 526; Austin v. Rosecke, 240 Minn. 321, 61 N. W. (2d) 240; Goldfine v. Johnson, 208 Minn. 449, 294 N. W. 459; Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448; Koch v. Lidberg, 219 Minn. 199, 17 N. W. (2d) 308.

■ In its brief, defendant stated that "we take to be proven defendant landlord was negligent. The basement lights did not work and there was no guard rail around the open boiler pit." But defendant also indicated that "legal issues might have been raised" about this subject. We feel

that there was ample evidence to support the jury's determination that defendant was negligent. While an owner and landlord is not a guarantor of the safety of the portions of the premises over which he retains control, the rule that generally applies in this state and elsewhere is that where the owner of business property leases a part thereof and retains in his control other parts which are necessary to the leased portions thereof, he is subject to liability to his lessee and others upon the land with the consent of the lessee for bodily harm caused to such persons by permitting a dangerous condition to remain unguarded upon that part of the premises remaining in his control, if the lessor by the exercise of reasonable care and inspection would have discovered the condition and risk involved therein and could thus have made the condition safe. See, 10 Dunnell, Dig. (3 ed.) § 5369. The landlord who rents the apartments in his building to various tenants, reserving control of the basements and common approaches, is obliged to use reasonable care to keep the same reasonably safe for the use of his tenants; and it is no defense that someone else is charged by him with, or assumes the performance of, that duty if it be not performed. See, Reardon v. Shimelman, 102 Conn. 383, 128 A. 705, 39 A. L. R. 287; Strong v. Shefveland, 249 Minn. 59, 81 N. W. (2d) 247.[1]

■ We are mainly concerned with defendant's strenuous contention that plaintiff, as a matter of law, was guilty of contributory negligence. This court has ordinarily defined contributory negligence as a "want of ordinary care or reasonable care on the part of a person injured by the negligence of another directly contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." 13B Dunnell, Dig. (3 ed.) § 7012.

In the consideration of the question of contributory negligence, each case must be determined by its own particular circumstances. In 13B Dunnell, Dig. (3 ed.) § 7033, p. 300, we find the following statements:

---

[1] On the question of a landlord's duty to a tenant generally, see Prosser, Torts (3 ed.) § 63; McNab v. Wallin, 133 Minn. 370, 158 N. W. 623; Wright & Taylor, Inc. v. Smith (Ky.) 315 S. W. (2d) 624; Carver v. Howard (Ky.) 280 S. W. (2d) 708; 10 Dunnell, Dig. (3 ed.) § 5369; and Gustafson v. Arthur L. Roberts Hotel Co. 194 Minn. 575, 261 N. W. 447.

"* * * Courts should be reluctant to set up arbitrary standards of behavior amounting in effect to rules of law to be applied in all cases without regard to the surrounding circumstances in each case. [The Minnesota Supreme Court] has expressly rejected the policy of applying arbitrary standards of behavior amounting in effect to rules of law to all cases without regard to surrounding circumstances. * * *

\* \* \* \* \*

"The arbitrary principle that failure to see that which is in plain sight necessarily constitutes contributory negligence as a matter of law without regard to surrounding circumstances, has now been rejected."

See, Ranum v. Swanson, 220 Minn. 170, 19 N. W. (2d) 327; Abraham v. Byman, 214 Minn. 355, 8 N. W. (2d) 231, and other cases cited in 13B Dunnell, Dig. (3 ed.) § 7033, pp. 300 to 301, note 49.

■ The main thrust of defendant's argument seems to be that plaintiff did not act prudently in going to the basement to change the blown-out fuse. We do not agree. In Jewell v. Blanchett Investment Co. 199 Minn. 267, 271 N. W. 461, the plaintiff was a guest in the Angus Hotel in St. Paul. The hotel had two regular means of ingress and egress, one on the Western Avenue side and one on the Selby Avenue side. Plaintiff at about 8:30 p. m. left the hotel with a friend, going out the Selby Avenue exit. An electric light fixture above the steps was not burning. Plaintiff stepped down to the first step which she could see only dimly. Being unable to see further, she reached for a handrail and finding none, stepped down upon the second step. She could not see the edge of this step, which was two inches wider than the one immediately above. Failing to locate the edge of the second step and assuming she had reached the sidewalk, she took a step and fell, suffering serious injuries. The trial court directed a verdict on the authority of the rule laid down in Johnston v. Tourangeau, 193 Minn. 635, 259 N. W. 187, on the ground that the plaintiff had assumed the risk and was guilty of contributory negligence as a matter of law. Plaintiff had previously used this entrance. On this occasion her destination was a theatre across the street from and a short distance west of the entrance. It was the hotel exit closest to the theatre. This court said that it did not think that the Tour-

angeau case, upon which defendant relies in the instant case, was applicable, as there was, in that case, no violation of a statutory duty. But this court said that violation of Mason St. 1927, § 5907, if the proximate cause of the injury, established liability in the absence of contributory negligence or assumption of risk. The court went on to say (199 Minn. 269, 271 N. W. 462):

"* * * *On the present record, the question of plaintiff's contributory negligence and the so-called assumption of risk were properly for a jury. The hall leading to the steps, being lighted, was in the nature of an invitation to use the exit.* Plaintiff had used this exit but three or four times during her short stay in the hotel. Naturally she did not recall the exact number of steps leading down to the sidewalk. *Any person of ordinary prudence, it seems to us, might, in the eyes of a jury, have done just as she did.* The difference in the width of the steps no doubt played its part in deceiving her into the belief that she had reached the sidewalk." (Italics supplied.)

The order of the court in the Jewell case granting defendant's motion for a directed verdict was reversed and a new trial granted.

In the instant case plaintiff rented space in defendant's building for a sewing center on June 1, 1964, and in discussing the lease, one of defendant's officers told plaintiff he could store some venetian blinds in the basement. He was told nothing about the location of the fuse box for the sewing center. Defendant's officer did not mention any open pit or danger in the basement. The part-time custodian was not working on the day of the accident when plaintiff blew a fuse while working on one of his sewing machines, leaving him without light or power in his business establishment. Plaintiff made inquiries of a long-time tenant who asked one of his employees to go into the basement with plaintiff. Plaintiff was not told of an open pit and Mrs. Smith had no knowledge of it at that time. The stairway leading to the basement and the hallway at the bottom were well lighted. When all of these factors are taken together, we cannot say that plaintiff acted unreasonably. As was said by this court in the Jewell case, any person of ordinary prudence might, in the eyes of a jury, have done just as he did.

Defendant had cited Johnston v. Tourangeau, *supra,* as controlling here on the question of plaintiff's duty of care. We have examined that case and we do not think it applicable to the facts in the instant case. Defendant also cites Huyink v. Hart Publications, Inc. 212 Minn. 87, 2 N. W. (2d) 552, as controlling. The court in that case affirmed the lower court's ruling that the plaintiff was guilty of contributory negligence as a matter of law. We followed the general rule that a person who proceeds in an unfamiliar situation where, by reason of darkness, he fails to observe where he is going and what may be the obstructions to his safe progress is, *in the absence of the stress of special circumstances,* guilty of contributory negligence as a matter of law upon the grounds that by such conduct he exposes himself to unreasonable risk of injury. However, this court in that case said (212 Minn. 91, 2 N. W. [2d] 554):

"Venturing in the dark does not constitute contributory negligence as a matter of law in all cases. The question is whether the plaintiff thereby unreasonably exposes himself to risk of injury. In some situations, we, as well as other courts, have held that the question presents a fact issue for the jury under the particular circumstances."

■ Plaintiff, however, contends that Iverson v. Quam, 226 Minn. 290, 32 N. W. (2d) 596, cited by both parties, is closer factually to the present case than the Huyink case. In the Iverson case we reversed a verdict directed for the defendant, holding that the question of plaintiff's contributory negligence was for the jury. In Iverson the plaintiff was unfamiliar with the premises (in that case a restaurant) and undertook to use them in a darkened condition. Looking for the ladies' room, she opened a door marked "Ladies," walked in, and closed the door after her, thinking she was in the ladies' room. She could see a light fixture, but because of the darkness could not see a wall switch on the opposite wall. She stepped toward the light fixture, thinking it had a cord or switch attached to it, and fell down a stairway leading to the restroom in the basement. When she reached for the light, she did not look at the floor where she was stepping because she was looking toward the light and for the switch to light it. After finding herself in darkness, she could

have reopened the door, which would have admitted light. The court in the Iverson case then stated (226 Minn. 297, 32 N. W. [2d] 601):

"It is obvious that the basis of the rules governing this class of cases [which find a plaintiff guilty of contributory negligence as a matter of law] rests upon the failure of the party involved to take reasonable precautions to light the unfamiliar and darkened stairs or passageway or otherwise to insure his safety while traversing the same."

The court held that the plaintiff in the Iverson case was not proceeding forward without taking precautions but was in the act of taking precautions at the time of the injury—that is, acting to turn on the light. In the instant case, plaintiff was stepping toward a light cord with the intention of turning on the light. The jury could reasonably have found that this was a more prudent thing for plaintiff to do than to try to make his way back with the aid of a flashlight.

We think it clear that the course taken by plaintiff and the helper who accompanied him with a flashlight was not so careless, reckless, or unreasonable as to establish plaintiff's contributory negligence or his assumption of the risk as a matter of law. In the Iverson case the court speaks of the defendant's invitation to use the premises. In the instant case plaintiff was told he could store something in the basement; and, additionally, the fuse box for his leased premises was in the basement. Everyone knows that fuses occasionally blow out. Does not this situation constitute an added invitation to the plaintiff to go to the basement when necessary to replace a fuse? The evidence disclosed by the record indicates that the basement was under the landlord's control but subject to the reasonable use thereof by the tenants for necessary purposes. Each of the cases cited by defendant has been distinguished by the court in the Iverson case.

In Peterson v. W. T. Rawleigh Co. 274 Minn. 495, 144 N. W. (2d) 555, this court held that the plaintiff was not contributorily negligent as a matter of law in walking over an obvious stretch of dangerous ice for a business purpose (to get order blanks and a load of products to sell). Our decision was based on the fact that the jury could find that the importance of plaintiff's purpose outweighed the probability of his sustain-

ing serious injury and there was no alternative more reasonable than the one he took. In the instant case we cannot say as a matter of law that there were other alternatives more reasonable than the one taken by plaintiff or that the risk of serious injury exceeded the importance of his purpose.

Defendant argues that the place was strange and dark. Plaintiff, however, proved these points in his case-in-chief. Obviously, if plaintiff were familiar with the premises, knew of the pit, the pit was illuminated, and plaintiff walked into it, this case would not now be before this court. Every instance of walking in the dark involves some degree of danger. The question is whether the plaintiff *unreasonably* exposes himself to risk of injury. The fact of injury alone does not prove unreasonableness. The following statements in the Beery case are apposite here (239 Minn. 52, 57 N. W. [2d] 841):

"* * * In analyzing the evidence it is to be borne in mind that contributory negligence on the part of the [plaintiff] is not established merely by showing that he worked in a place of known danger but it also must be shown that his conduct was negligent in the face of the danger. In other words, the basic test is whether the [plaintiff] acted as a reasonably prudent man under the circumstances."

In order to invoke the doctrine of assumption of risk, it is essential that the risk or danger shall have been known to, and appreciated by, plaintiff. No risk is assumed of which plaintiff was ignorant. Logically, plaintiff cannot make an intelligent choice to confront a risk if he does not actually know of the danger, or know such facts as would in law charge him with knowledge of the danger and appreciation thereof. Knowledge of the particular risk or danger and an appreciation of the magnitude thereof are independent and essential elements of the doctrine of assumption of risk. In order to assume the risk of a particular act or condition one must know and appreciate the danger itself and not just the facts which constitute it.

The knowledge required is actual knowledge as distinguished from constructive notice or knowledge. The mere fact that plaintiff would, in the exercise of ordinary care, have known or appreciated the danger

is not sufficient. Where the facts are such that plaintiff must have had knowledge, the situation is equivalent to actual knowledge; but where it merely appears that he should or could have discovered the danger, the defense is contributory negligence and not assumption of risk. 65A C. J. S., Negligence, § 174(3).

We said in Schrader v. Kriesel, 232 Minn. 238, 247, 45 N. W. (2d) 395, 400:

"* * * Notice or knowledge and appreciation of the danger are indispensable to an assumption of risk. City of Winona v. Botzet (8 Cir.) 169 F. 321, 23 L. R. A. (N. S.) 204. Assumption of risk involves comprehension that a peril is to be encountered and a willingness to encounter it. It differs from contributory negligence, based on carelessness, by being an exercise of intelligent choice."

In the recent case of Hansen v. City of Minneapolis, 261 Minn. 568, 571, 113 N. W. (2d) 508, 510, we said:

"* * * A person, to be charged with assumption of risk, must know, understand, and appreciate the risk of being injured. However, in any case involving assumption of the risk, the rule is that the question whether a party has assumed the risk of a given situation usually is for the jury, unless the evidence is conclusive. In such case, it becomes a question of law. Geis v. Hodgman [255 Minn. 1, 95 N. W. (2d) 311]. The question then in this case is whether the evidence on the question of the assumption of the risk is so conclusive that there is nothing for the jury to pass upon."

In the instant case, plaintiff had no knowledge of the existence of the open, unguarded pit in the room where the sewing center fuse box was located. The fact that Newman, the cafe owner, said to plaintiff that "it was rough down there" did not inform him of those facts. It simply indicated that reasonable care had to be exercised where one goes into a dark, unfamiliar place. It most certainly did not indicate an open, unguarded pit located about 2 feet from the fuse box he was seeking. The fact that Mrs. Smith went along with plaintiff at the request of the cafe owner did not indicate any risk. She had been down in the basement

on a number of occasions and was told in the presence of plaintiff where to look for the fuse box.

We conclude that the evidence is not conclusive that plaintiff assumed the risk as a matter of law. In fact, a reading of the entire record would indicate that the doctrine of assumption of risk has no application herein. Neither do we think that the evidence established contributory negligence as a matter of law. These issues were properly left for the jury's determination.

Affirmed.

OTIS, JUSTICE (dissenting).

I cannot agree that a plaintiff may be found free from contributory negligence if after completing his mission he is injured by falling into an open pit while walking blindly through a dark and unfamiliar basement without using a flashlight which is then available to him. To so hold overrules sub silentio our decisions in Murray v. Albert Lea Home Investment Co. 202 Minn. 62, 277 N. W. 424; Plahn v. Masonic Hall Bldg. Assn. 206 Minn. 232, 288 N. W. 575; Sartori v. Capitol City Lodge No. 48, 212 Minn. 538, 4 N. W. (2d) 339; and more particularly Huyink v. Hart Publications, Inc. 212 Minn. 87, 2 N. W. (2d) 552, which, as I see it, is indistinguishable on the facts.

KNUTSON, CHIEF JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Otis.