# HARVEY DORN AND OTHERS v. HOME FARMERS MUTUAL INSURANCE ASSOCIATION.

220 N. W. 2d 503.

July 19, 1974—No. 44592.

*Wiese & Cox, Paul G. Neimann,* and *Denis E. Grande,* for appellant.

*Gault, MacKenzie, Gustafson & Litynski, W. M. Gustafson,* and *Jerold M. Lucas,* for respondents.

Heard before MacLaughlin, Yetka, and Scott, JJ., and considered and decided by the court.

YETKA, JUSTICE.

Defendant appeals from an order of the district court denying its motion for judgment n. o. v., or, alternatively, for a new trial.

We affirm.

The facts relevant to this appeal are as follows.

On July 14, 1971, a hailstorm inflicted damage upon the crops of plaintiffs, all of whom conduct farming operations in Nicollet County, Minnesota. It is uncontested that these damaged crops were covered by hail insurance policies issued by defendant.

Thereafter defendant dispatched Leslie R. Leet to ascertain the extent of hail damage inflicted. Leet inspected plaintiffs' fields early in August 1971 and transcribed his estimates of percentage crop loss onto "adjustment of hail loss" forms, one for each plaintiff. This form contained the following clause:

"I agree to accept the above amount claimed under the above identified policy in full payment, compromise and satisfaction for all loss and damage sustained previous to this date. * * * I understand that this adjustment shall be binding on both parties except in the event of clerical or *gross error."* (Italics supplied.)

Each plaintiff agreed with Leet's loss estimate and signed the hail loss adjustment form below the above quoted clause. Leet also signed each form. The signed and completed adjustment

forms along with corresponding worksheets were then forwarded to defendant's home office for processing of plaintiffs' claims.

The adjustments and worksheets were reviewed by Cornelius Denzer, defendant's adjusting manager. Denzer was of the opinion that Leet had made errors in adjusting procedures which resulted in excessive appraisals of percentage damage to plaintiffs' insured crops. Denzer then personally spot checked several of plaintiffs' fields which, in his opinion, confirmed his initial suspicion that the Leet adjustments were inaccurate in favor of insureds. In late August 1971, pursuant to Denzer's instructions, a second adjustment of plaintiffs' crop losses was performed by Melbourne Johnson. This second adjustment, in comparison to the Leet adjustment, resulted in substantially lower estimates of plaintiffs' percentage crop losses. However, plaintiffs refused to sign the adjustment forms reflecting the results of the second estimate.

In September 1971, defendant issued and mailed checks to each plaintiff in full settlement of the crop losses sustained due to the hailstorm of July 14, 1971. These checks were in amounts based on the percentage of crop damage figures contained in the *second* adjustments. Plaintiffs refused to negotiate these checks. Rather, they commenced this action.

The record is barren of evidence that any negotiations took place between the parties subsequent to the issuance of the "settlement" checks. It is uncontested that neither plaintiffs nor defendant requested arbitration.

On June 8, 1972, three of the plaintiffs commenced suit in district court to recover under their hail insurance policies in amounts based on the percentage of crop loss set forth in the adjustment agreements which they had signed. Plaintiffs contended that defendant was bound by these agreements as the basis for the dollar amounts payable to plaintiffs under their hail insurance policies. The fourth plaintiff commenced an identical suit in the same court on June 30, 1972. These actions were consolidated on September 5, 1972.

Thereafter, trial before jury was commenced to determine the actual crop damage. The jury found that the Leet adjustment accurately stated the crop damage, and the trial court ordered judgment for plaintiffs accordingly.

The hail insurance policy at issue contains the following clause:

"ARBITRATION—In case of loss under this policy, and failure of the parties to agree as to the amount of such loss, it is mutually agreed that such amount shall be referred to [arbitration]. * * * [S]uch reference, unless waived by the parties, shall be a condition precedent to any right of action to recover for such loss, and no suit for the recovery of any claim *by virtue of* this policy shall be sustained unless commenced within *six months* after the *loss occurred.*" [1] (Italics supplied.)

Defendant has steadfastly insisted throughout the course of this litigation and on appeal that the above provision required the trial court to grant defendant summary judgment because (1) the suit was commenced more than 6 months after the date of the hailstorm, and (2) plaintiff had not referred the matter to arbitration before bringing suit.

■ Defendant first contends that the policy phrase, "by virtue of," brings the instant litigation within the ambit of said policy. However, this court held in the face of similar language that a suit to enforce an adjustment agreement is an action distinct from the policy and is therefore not subject to the limitation period specified therein. Strampe v. Minnesota Farmers' Mut. Ins. Co. 109 Minn. 364, 123 N. W. 1083 (1909). We are not persuaded by defendant's arguments that Strampe is distinguishable from the case at bar. Defendant does not contest the fact that there was coverage in the instant case. It is apparent to this court that the determination of percentage crop loss was the critical factual variable in the processing of claims and is therefore not

---

[1] This clause adopts the requirements imposed by Minn. St. 1971, § 65A.26.

distinguishable from the adjustment agreement at issue in Strampe.

We further note that the insurance policy at issue in Strampe contained the identical "by virtue of" language upon which defendant relies. Yet the legislature adopted this same language in L. 1927, c. 419, § 1 (the predecessor of Minn. St. 65A.26). Had the legislature intended to abrogate the precedent of Strampe and bring suits on adjustment agreements within the ambit of the insurance policy provisions, it is only logical that such intent would have been manifested by appropriate language.

We therefore hold Strampe controlling in the case at bar. Since the limitation applicable is the 6-year period set forth in Minn. St. 541.05, we need not today decide when the limitation period begins to run. Neither do we consider whether defendant by its conduct was estopped from raising the defense that the limitation period had expired.

■ Defendant's contention that arbitration was a condition precedent to plaintiffs' bringing suit on the adjustment agreement is also controlled by Strampe. In that case, the insurance policy contained an arbitration clause similar to the policy here. The court in Strampe stated, "They having agreed and adjusted the loss, there was nothing to arbitrate." 109 Minn. 368, 123 N. W. 1084. There appears no valid reason to overrule that proposition. There can be no failure to agree in the face of a binding adjustment agreement. We therefore hold that once an adjustment agreement is executed, arbitration is not a condition precedent to bringing suit in our courts to enforce said contract.

■ During the course of the trial, plaintiffs, over objection, successfully obtained permission to call one Charles Mason as an expert witness to rebut the testimony given by one of defendant's witnesses. Professor Mason was not listed as a potential witness in plaintiffs' answers to pretrial interrogatories. Defendant contends that allowing plaintiffs to call Professor Mason without listing his name on pretrial answers to interrogatories constitutes reversible error. In support of this argument defend-

ant places primary reliance on Gebhard v. Niedzwiecki, 265 Minn. 471, 122 N. W. 2d 110 (1963).

Gebhard is distinguishable from the instant case in one very important aspect. In that case, the existence of the new witness was discovered several days prior to the giving of her testimony. However, in the case at bar it appears that counsel for plaintiffs had no intention to call Professor Mason prior to trial, thus, there was no failure to disclose the identity of a known witness.

The court in Gebhard did not lay down an inflexible rule that failure to disclose the identity of an intended witness, *per se* required exclusion of the testimony of said witness. Rather, Gebhard held that this sanction would be imposed only when it appears the calling of this witness would result in prejudice. The court went on to note that one of the principles of the sanction was to prevent wrongdoers from profiting from their own violations. Further, in Gebhard the withholding of the name of the witness was willful (in contrast to the case at bar). Further, a review of the Mason testimony reveals that he was not in any stretch of the imagination a convincing witness. Rather, on cross-examination defendant's counsel substantially reduced or entirely eradicated the probative value of Professor Mason's testimony.

We thus conclude that no error was committed by allowing this witness to testify. We hasten to add that one of the primary purposes of pretrial interrogatories is to prevent unjust surprise at trial. While we recognize that our trial courts must have some discretion in this area, we caution that this court will carefully scrutinize situations such as the one at issue.

■ Defendant also contends the evidence does not support the verdict. It is well settled in this jurisdiction that in examining a verdict on appeal, the evidence must be considered in a light most favorable to the prevailing party and the verdict must be sustained if it is possible to do so on any reasonable theory of evidence. The verdict should not be disturbed unless it is manifestly and palpably contrary to the evidence. Hestad v. Pennsyl-

vania Life Ins. Co. 295 Minn. 306, 204 N. W. 2d 433 (1973). See, also, Stapleman v. St. Joseph the Worker, 295 Minn. 406, 205 N. W. 2d 677 (1973); Krengel v. Midwest Automatic Photo, Inc. 295 Minn. 200, 203 N. W. 2d 841 (1973); Thill v. Modern Erecting Co. 292 Minn. 80, 193 N. W. 2d 298 (1971).

We have carefully examined the record. In view of the strong deference extended to jury verdicts on appeal, there appears to be sufficient evidence in the record to sustain the verdict in the case at bar.

The decision of the trial court is in all respects affirmed.

Affirmed.