RUDOLPH M. MILLOCH AND ANOTHER v. WILLIAM GETTY, d.b.a. BILL'S MOBIL SERVICE AND ANOTHER, AND ANOTHER.

220 N. W. 2d 481.

July 26, 1974—No. 44292.

*Erickson & Casey* and *Carl E. Erickson,* for appellants.

*Jardine, Logan & O'Brien* and *Alan R. Vanasek,* for respondent Getty.

*Ryan, Ryan & Ebert* and *Thomas J. Ryan,* for respondent Mobil Oil Corporation.

Heard before Sheran, C. J., and Otis and Todd, JJ., and considered and decided by the court.

TODD, JUSTICE.

Plaintiffs Rudolph and Violet Milloch appeal from an order denying their motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. In a special verdict, the jury found that plaintiff Rudolph Milloch had assumed the risk of the injuries he sustained when he fell on defendant William J. Getty's property. The trial court ordered judgment for defendants. We reverse.

Defendant Getty was the owner of the real property where the accident occurred, the Robo Car Wash and Mobile Station in Brainerd, Minnesota. He was also a dealer for defendant Mobil Oil Corporation. The premises consist of a service station with two service bays and an office, pump islands in the front and rear of the station, and a double stall car wash. The car-wash stalls are coin-operated, drive-through types entered from the rear of the station.

Plaintiff fell in a generally level concrete area in the rear of the service station, under which lay Mobil's storage tanks. Over each end of the three storage tanks was an access hole covered by a metal cover approximately 10 inches in diameter. The metal covers were centered in a raised concrete area, each approximately 3 feet in diameter and 3½ inches above the level

of the surrounding area. The edges of the raised area gradually sloped to the general level. The covers were colored to indicate the contents of the tank beneath, but the raised concrete area was indistinguishable from that surrounding. The entire storage tank area was constructed in accordance with Mobil's specifications and at Mobil's expense. However, responsibility for the condition of the area and for removal of snow and ice was entirely Getty's.

When the wash stalls were in use and the wind was blowing, soapy spray would blow out onto the concrete surface. When the weather was sufficiently cold, the spray would freeze. Ice was eliminated by use of a heating system in the concrete directly in front of and behind the wash stalls and by use of salt or sand in other areas, but neither corrective remedy was used the day of the accident.

The temperature at 8 a. m. of the day of the accident was 22°, but reached a high in the low 50's in the afternoon. Plaintiff drove to the car wash in the early afternoon. He had used defendant's car-wash equipment on previous occasions. He placed three quarters in the coin box and drove into the outermost stall. As had occurred on other occasions, the automatic spray did not engage. He backed out of the stall, walked around the rear of his car, and proceeded toward the rear door of the station for assistance.

He walked directly to the door, his path taking him behind the west wash stall and over one of the raised concrete areas. A car was being washed in that stall at the time and soapy spray was blowing out of the wash stall partially into his path. The concrete directly behind the west stall was not icy or slippery. He passed into the shadow-covered area around the storage tank cover, walking normally, looking straight ahead, unaware of the incline. Suddenly his feet slipped out from under him and he fell forward on the left side of his face. He arose and continued into the station where he reported his fall and the malfunction of the equipment. When he came out again, he picked up his glasses and for

the first time noticed ice on the raised area of concrete. Refusing assistance, he proceeded to have his car washed, drove home, and subsequently saw a doctor.

After the accident, William Getty observed the area where plaintiff had fallen and found an area some 3 by 8 feet encompassing the raised area, covered with a light glaze of ice. He described the glaze as being the same color as the concrete, difficult to see and pick out.

In a special verdict the jury found that each defendant and plaintiff Rudolph Milloch were negligent and the negligence of each was a direct cause of the accident. They apportioned the negligence as follows: William Getty, doing business as Bill's Mobil Service and Getty's Robo, Inc., 50 percent; Mobil Oil Corporation, 30 percent; Rudolph Milloch, 20 percent. The jury further found that plaintiff assumed the risk and assessed his damages at $8,750. No damages were assessed in favor of plaintiff Violet Milloch.

■ As this action arose prior to our decision in Springrose v. Willmore, 292 Minn. 23, 192 N. W. 2d 826 (1971), the defense of secondary assumption of risk operated to bar entirely recovery by plaintiff. It is plaintiff's position that as a matter of law the defense was inapplicable, as he did not know or appreciate the particular danger encountered.

We have recently discussed at some length the necessary elements of assumption of risk. See, Meulners v. Hawkes, 299 Minn. 76, 216 N. W. 2d 633 (1974), and Olson v. Hansen, 299 Minn. 39, 216 N. W. 2d 124 (1974). As we noted therein, the essential element of secondary assumption of risk is the voluntary choice to encounter a known and appreciated danger created by the defendant.

We have carefully reviewed the record, transcript, and argument of counsel and have found no evidence that plaintiff knew or should have known there was ice on defendant's premises until after his fall. Thus, he could not have made a voluntary choice to encounter a known and appreciated danger. Coenan v. Buck-

man Bldg. Corp. 278 Minn. 193, 153 N. W. 2d 329 (1967); Schrader v. Kriesel, 232 Minn. 238, 45 N. W. 2d 395 (1950).

■ All of the evidence of plaintiff's actions preceding his injury related to the elements of his negligence. Assumption of risk was not present in this case. The trial court properly instructed the jury on the issues of negligence and contributory negligence. The evidence considered by the jury relates only to the issue of negligence and cannot be considered with respect to assumption of risk, since the essential element—knowledge—is not present in this case. Therefore, we hold it was improper for the trial court to submit the issue of assumption of risk to the jury for consideration.

We are satisfied that the jury correctly assessed the relative negligence of each of the parties. This action is therefore reversed and remanded to the district court with instructions to order judgment for plaintiff.

Reversed and remanded.