KENNETH P. REIKOW v. BITUMINOUS
CONSTRUCTION COMPANY, INC.,
AND ANOTHER.
KROHN CONSTRUCTION COMPANY,
THIRD-PARTY DEFENDANT.

224 N. W. 2d 921.

December 20, 1974—No. 44719.

*Barnett, Ratelle, Hennessy, Vander Vort & Stasel* and *W. Scott Herzog,* for appellants.

*Grose, Von Holtum, Von Holtum, Sieben & Schmidt* and *Harry Sieben, Jr.,* for respondent plaintiff.

*Carroll, Cronan, Roth & Austin* and *Thomas A. Foster,* for respondent third-party defendant.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeal from an order of the District Court of Hennepin County denying defendants' motion for judgment notwithstanding the verdict, or, alternatively, for a new trial.

The appeal arises from a pedestrian-truck collision in which plaintiff sustained severe bodily injuries. The accident occurred November 24, 1970, under the following circumstances: On the day of the accident plaintiff was employed as a working foreman by third-party defendant, Krohn Construction Company, which was then a subcontractor[1] on a construction project, hereinafter referred to as the Belmar Project, located in Hennepin County. Defendant Bituminous Construction Company also was a subcontractor on the same project.[2]

Krohn Construction was not working at Belmar on the day

---

[1] Krohn Construction Company had contracted to lay sewer pipe.

[2] Bituminous Construction Company had contracted to pave the parking lot.

of the accident. However, Krohn had left a backhoe parked at the site in an area that was being prepared for blacktopping by Bituminous Construction, and at approximately 3 p. m. on the day of the accident, the Belmar project supervisor telephoned Mr. Terry Krohn, part owner of Krohn Construction Company, and requested Krohn to move his backhoe from the area to be paved. Mr. Krohn immediately proceeded to another Krohn Construction job site and picked up plaintiff and plaintiff's son to assist in moving the backhoe. Mr. Krohn, plaintiff, and his son arrived at Belmar at approximately 3:30 p. m. They then removed a steel panel covering the door of the cab of the backhoe, but did not remove similar panels covering the front and left side of the cab, thus enabling the operator to see only out of the right-hand side of the cab. Mr. Krohn then got into the cab, started the machine, and turned north. Plaintiff's son drove Krohn's automobile to a point approximately 70 feet east of the backhoe and remained there. As the backhoe began creeping north across the lot, plaintiff was directing this movement via hand and arm signals from a point approximately 10 feet forward and 10 feet to the operator's right (east). As the machine moved forward, plaintiff sidestepped in the same direction with his back to the east. At a point approximately 25 to 40 feet from the south edge of the lot, plaintiff was struck down from behind (east) by a tandem axle dump truck, operated by a Bituminous employee, defendant David Omann. Defendants do not seriously resist the finding that Omann was negligent in the operation of said vehicle.

Plaintiff brought an action in Hennepin County District Court seeking $100,000 in damages from Bituminous Construction Company and David Omann for injuries sustained in the above described accident. Bituminous and Omann in turn filed a third-party complaint against Krohn Construction Company alleging that the latter's negligence was the proximate cause of plaintiff's injuries.

As a result of the accident, plaintiff suffered a fractured rib,

broken pelvis, and lower back sprain. He also developed a pulmonary embolism. Medical testimony further disclosed that the back injuries resulted in a permanent disability to plaintiff, who will have to endure pain in his back, tailbone, and legs for the rest of his life. There was also ample evidence that plaintiff will not be able to perform the heavy construction work which was his occupation prior to the accident.

Plaintiff presently is employed as a construction inspector at a salary of $700 *per month.* There was evidence that but for his injuries he could be earning $325 *per week* as a working foreman. He was 50 years old at the time of trial, with a life expectancy of 25 years.

The trial court directed the jury to find defendants Bituminous and Omann negligent and that that negligence was a proximate cause of plaintiff's injuries. The court refused to find that plaintiff had assumed the risk as a matter of law, and refused to submit the question of assumption of risk to the jury.

The jury returned a verdict finding that plaintiff had been negligent, but that his negligence was not a cause of the accident, and that Krohn had not been negligent. It assessed damages at $150,000, which sum was later reduced to $100,000 by the court in conformity with the damages alleged in plaintiff's complaint.

The questions raised on this appeal are the following:

1. Defendants allege that the verdict was excessive and the result of passion.

In view of the extensive special damages proven and the multiple injuries and permanent disability on the part of plaintiff, while the verdict may appear generous, it certainly is not excessive.

2. The second issue raised on this appeal is whether the court should have submitted the question of assumption of risk to the jury.

In the recent case of Milloch v. Getty, 300 Minn. 442, 445, 220 N. W. 2d 481, 483 (1974), we stated the well-settled rule that—

"* * * the essential element of secondary assumption of risk

is the voluntary choice to encounter a *known* and *appreciated* danger created by the defendant." (Italics supplied.)

Here there could be no voluntary assumption because the plaintiff, his son, and Terry Krohn all testified that they were unaware that the truck operated by Mr. Omann was moving back and forth across the lot, and even if one were to accept the testimony of defendant Omann and others that in fact Omann was driving the truck back and forth across the lot prior to the injury, or any other testimony in the light most favorable to the defendants, plaintiff had a right to assume that the truck would be driven in a careful manner with the driver keeping an outlook so that he would not strike anyone who might be on the lot.

Accordingly, the question here is not one of assumption of risk, but contributory negligence. The court did submit the question of contributory negligence to the jury, which found that any contributory negligence was not a proximate cause of the accident. This case is a classical example of one which raises the issue of contributory negligence and not a proper case for submission of assumption of risk, and, therefore, the court was correct.

Defendants contend that, since the court directed a verdict of negligence on the part of defendant Omann, it should have likewise directed a verdict of negligence on the part of plaintiff because "the actions of plaintiff and defendant are identical with the single exception that the defendant was driving a truck and plaintiff was on foot. For the trial court to rule that one is negligent as a matter of law, and that the other is not, would be improper, unless defendant is found to be negligent simply because he was 'larger' than the plaintiff."

It seems to us that to equate driving a large truck to moving on foot is simply illogical. It was within the sound discretion of the trial court to decide that the question of contributory negligence on the part of the plaintiff should be submitted to the jury because each case of negligence must be determined by its own particular circumstances. Coenen v. Buckman Bldg. Corp. 278 Minn. 193, 199, 153 N. W. 2d 329, 335 (1967).

3-4. Defendants also complain that the trial court made a number of evidentiary rulings that were prejudicial to them and were not justified, and therefore were arbitrary and showed bias and prejudice in favor of plaintiff.

The first of these is that while plaintiff was allowed to submit certain photographs taken at the scene of the accident, the defendants were not. We have said repeatedly in previous decisions of this court that the trial court is vested with wide discretion in determining whether to admit photographs into evidence or exclude them. LaCombe v. Minneapolis St. Ry. Co. 236 Minn. 86, 51 N. W. 2d 839 (1952). In this case, there are several dissimilarities between the photographs at issue. For example, the cab of the backhoe has one seat, thus preventing the driver from moving around, which is not the case of a truck cab. Additionally, mirrors of trucks are easily moved and adjusted; the photographs defendants offered were not taken by defendant, Omann, who had been the driver of the truck; and defendants made no showing that the person who took the photographs was the same size physically or that his position when he took them was similar to that of Omann when the accident occurred.

Secondly, defendants claim that it was error to narrow the scope of the testimony of certain witnesses called by defendants, which witnesses were not disclosed by defendants in response to interrogatories served upon them by the plaintiff. Yet, defendants' counsel himself, when requesting that these witnesses be allowed to testify, agreed to limit the scope of their testimony. The court agreed to allow the testimony because they were named as eyewitnesses to the accident in the deposition taken of Mr. Omann. The trial court concluded that no unjust surprise would result if these men were allowed to testify as to what they saw, but the scope of their testimony was limited in order to insure against surprise. It seems to us that this decision was proper in view of our decision in Dorn v. Home Farmers Mutual Ins. Assn. 300 Minn. 414, 220 N. W. 2d 503 (1974).

Defendants also assert that they were prejudiced by the court's

refusing to allow them to call as a witness one James Haney, who they claim was the only independent and impartial witness.

The facts surrounding the refusal of the court to allow Haney to testify were these: Plaintiff had subpoenaed Haney, he was available in the courtroom in the morning at the close of the testimony on the part of plaintiff. Defendants' counsel then placed his witnesses on the stand and, after their testimony had been given, he asked if Mr. Haney was in the courtroom. He was not because plaintiff's counsel had decided that he would not need Haney's testimony in rebuttal, as had been his original intent, and had told Haney he was discharged from the subpoena. Although it was still before the noon recess, defendants apparently made no effort at that point to subpoena Haney or have him available for the afternoon, but rather, after completing the testimony and after conference with the court following the noon recess, requested a delay in the trial until 4 p. m. to get Haney in to testify. The trial court refused that delay. After recessing for the weekend, the court convened again the following Tuesday and defendants then sought again to call Haney. Their request was denied. At that point, the court and counsel had already worked out the instructions to be given to the jury. The court's position was that the testimony of Haney, which would be on the question of whether the truck driven by Omann was being moved back and forth or had been stationary, would be merely cumulative anyway. There is also some question as to whether Haney's testimony would have been impartial, inasmuch as he was an employee of the general contractor on the Belmar Project.

It seems to us that if defendants wanted Haney to testify, they had an obligation to place him under subpoena, or at least talk with him when he was seen in the courtroom on the last day of the testimony and request him to keep himself available, or, at the very least, to have subpoenaed him in the morning when nearing the close of the testimony so that he would be available for testimony immediately after lunch, when the court would

have received such testimony. Therefore, we find no prejudice in the trial court's action in these matters. As a matter of fact, it seems to us that the court leaned over backwards to be as patient and as fair to the parties as it was humanly possible to be.

Some objection was also made to the special verdict form, but it is difficult to see how the court could have submitted the questions in any other manner once it found that defendants were negligent and directed a verdict on that issue.

There is also some reference to the fact that counsel for the plaintiff, in closing argument, read from a medical report which was not in evidence. Plaintiff's counsel indicated that he did use a medical report of a doctor whom the plaintiff consulted, but the doctor was actually on the stand as defendants' witness; that plaintiff's counsel used the medical report for purposes of cross-examination of that doctor and made notes of the testimony of the doctor; and that it was the notes that he referred to in his closing arguments. In any event, the closing arguments were not taken down by a court reporter. Here, once again, in previous decisions of this court we have held that whether closing arguments of opposing counsel constitute misconduct or not so as to entitle one to a new trial is usually within the discretion of the trial court. Hardy v. Anderson, 241 Minn. 478, 484, 63 N. W. 2d 814, 819 (1954) and cases cited therein. See, also, Ismil v. L. H. Sowles Co. 295 Minn. 120, 203 N. W. 2d 354 (1972).

Affirmed.