Marjorie A. KOEHNLE, as Trustee for the heirs and next of kin of Dean A. Koehnle, decedent, Appellant (C5–83–1692),

v.

M.W. ETTINGER, INC., Appellant (C4–83–1876),

Danny Craig MORGAN, Defendant,

Pinto Trucking Services, Incorporated, Respondent,

and

Pinto Trucking Services, Incorporated, defendant and third party plaintiff, Respondent,

v.

STATE of Minnesota, third party defendant, Respondent.

Nos. C5–83–1692, C4–83–1876.

Court of Appeals of Minnesota.

July 31, 1984.

Joseph H. Rivard, Rivard, Convery & Associates, P.A., St. Paul, David W. Nord, Caledonia, for Koehnle.

Joseph M. Stocco, Edina, for M.W. Ettinger, Inc.

Robert J. McGuire, Mark A. Gwin, Minneapolis, for Pinto Trucking.

Hubert H. Humphrey, III, Atty. Gen., David W. McKenna, Asst. Atty. Gen., St. Paul, for the State.

Heard, considered and decided by PARKER, P.J., and FORSBERG and CRIPPEN, JJ.

## OPINION

FORSBERG, Judge.

This is a consolidated appeal arising out of a wrongful death action. Appellant Koehnle appeals from an order of the trial court denying her motion for a new trial and from the judgment entered. Appellant claims that she was denied a ·fair trial based on several erroneous evidentiary rulings. The second appeal involves an indemnification issue between ˋrespondent Pinto and respondent M.W. Ettinger because of a service agreement.

## FACTS

On September 25, 1979, a Minnesota Highway Department crew was patching a couple of holes in the northerly (right-hand) westbound lane of Highway 94, near Lake Elmo, Minnesota. This is a four-lane divided highway running east and west. Danny Morgan was driving a semi-trailer rig west on this highway, coming from Chicago and heading for the Minneapolis-St. Paul Airport. Dean Koehnle was a member of the crew. The semi struck Koehnle, and he died some days thereafter. Morgan was an employee of defendant M.W. Ettinger, Inc.; he and the truck were leased to defendant Pinto Trucking Services, Inc.

Prior to beginning work on the morning of this accident, the road crew had placed highway cones on the west-end of each white "skip stripe," or white lines between the two westbound lanes. Immediately before the accident, appellant's decedent was blowing debris into the corner of a pothole so that it could be shoveled out by another member of the crew. The hole in which he was working came right up to the center of the two westbound lanes. No one saw either the vehicle or Koehnle at the moment of impact.

Morgan testified that he observed that construction crew in the right-hand westbound lane, but never observed anyone standing in his traveling lane. In addition, Morgan stated that he did not leave the left-hand lane of travel and only became aware of the accident because of a loud bang. The Morgan truck, according to appellant, was eight feet wide. His traveling lane was approximately twelve feet wide. Near the spot where Koehnle was working, there was also a fifteen foot left turn lane.

The central fact question in the case seemed to be whether the truck had crossed the center line at the time of impact or whether Koehnle stepped out of the south side of the hole, and into the lane of traffic in front of the truck.

## ISSUES

1. Did the trial court err in permitting evidence that worker's compensation benefits were paid to the appellant?

2. Did the trial court err in excluding Paskeuric's testimony regarding the speed of the Morgan truck?

3. Did the trial court improperly exclude expert opinion testimony regarding whether the truck crossed the center line?

4. Did the trial court err in allowing respondent Morgan to testify as to a statement made by Paskeuric at the scene of the accident?

5. Was Pinto entitled to reasonable attorney's fees and costs from Ettinger?

## ANALYSIS

*Evidence of Workman's Compensation Claims*

Appellant contends that the trial court erred in permitting testimony concerning worker's compensation payments made to her. Generally, it is error to admit evidence which shows that appellant received worker's compensation which is not the basis of a lawsuit when the only purpose of introducing such evidence is to convey the information to the jury. *Guile v. Greenberg*, 192 Minn. 548, 257 N.W. 649 (Minn.1934). It should be noted, however, that the third party defendant (and respondent), State of Minnesota, brought a counterclaim in this action to recover worker's compensation benefits paid to appellant Koehnle. Thus, the benefit paid became an issue in this case. Moreover, appellant not only failed to request a severance of this action, but did not object to the admission of evidence by the State. See T., 59–61, and T., 460–68. (The only objection made was to testimony that such benefits were continuing and the witness answered in the negative.)

Objections must be made to admission of allegedly improper evidence in order to preserve the issue for appeal. The Minnesota Supreme Court stated in *Helm v. El Rehbein & Son Inc.*, 257 N.W.2d 584, 587 n. 2 (Minn.1977):

The record fails to disclose any objections by plaintiffs to the questions they

now allege to be prejudicial. Where allegedly improper or prejudicial evidence has been admitted without objection, a party may not object to its admissibility for the first time in a motion for a new trial or on appeal. *Poppler v. O'Connor*, 306 Minn. 539, 235 N.W.2d 617 (1975). Additionally, Minn.R.Evid., 103(a)(1) states:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and

(1) *Objection.* In case the ruling is one admitting evidence a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context ...

Appellant, however, did move prior to trial as follows:

Defendants refrain from introducing testimony or evidence of the fact that decedent's next of kin received worker's compensation benefits or, in the alternative, for an instruction that such benefits must be paid back from any award which may be granted.

But, the trial judge did in fact give the instruction requested by appellant on this issue. (T., 569–570.) Also, such testimony had no relevance to the liability issues in this case.

### Evidence Regarding Speed of Morgan's Truck

Appellant claims that the trial judge erred in excluding the opinion of another work crew member, Denise Paskeuric, regarding the speed of the truck. Appellant seemed to be under the impression that the court would only allow an opinion by Paskeuric as to the speed of the truck at the time of impact. Appellant, however, sought the witness' opinion of the speed of the truck only *at the time of impact.* Paskeuric previously testified that she had not seen the impact and, therefore, disqualified herself from expressing an opinion as to speed.

Then another exchange occurred in which she was asked the speed of the vehicle *immediately after* it struck Koehnle. Objection was made but no ruling occurred, and appellant never pursued the issue. However, even in this case, she didn't state *when* she observed the vehicle. (T., 161–172.)

The question of the sufficiency of foundation for opinion evidence as to the speed of an automobile is largely a matter within the sound discretion of the trial court. *Ramirez v. Miska*, 304 Minn. 4, 10, 228 N.W.2d 871, 874 (Minn.1975); *Stedman v. Norlin*, 243 Minn. 389, 396, 68 N.W.2d 393, 397 (Minn.1955). There clearly was not an abuse of discretion by the trial court.

Appellant claims the trial court erred in excluding certain opinion evidence by a highway patrolman who was trained in accident reconstruction.

Officer Gibson was asked for an opinion of whether the vehicle, which Morgan was driving (a semi-tractor and trailer unit), could travel along a roadway with three wheels on the ground and a fourth overhanging a hole in the roadway. This testimony was offered in response to earlier testimony that there were no tire markings in the hole which Koehnle had been working prior to accident. Appellants hoped to counter the contention that since there were no tire marks in the excavation, the truck could not have crossed the center line. However, the dual wheels extended one foot on each side beyond the front wheels. Whether these dual wheels left or did not leave tire marks may be deemed irrelevant since this would not tend to show where the front part of the truck, which hit Koehnle, was at the moment of impact. The ruling does not appear to be an abuse of discretion.

Appellant's next assignment of error is the trial court's refusal to allow Trooper Gibson to respond to a hypothetical question regarding his opinion of whether the truck crossed the center line. Gibson had testified that based on his

knowledge as an accident reconstruction expert, and his information of this accident, that the truck never left its lane of travel.

On cross-examination he admitted that his opinion would not be the same if he had known a traffic cone at the scene was missing immediately after the accident. The counsel for appellant tried to pose a hypothetical question in effect seeking an opinion that Morgan's truck crossed the center line. There were certain facts missing from the hypothetical (e.g. no tire marks seen near hole) and the trial court sustained an objection to the question. Then the question was rephrased, and again the objection was sustained. It is not clear why the objection was sustained, but even if erroneous, the ruling was not prejudicial. Gibson answered previously that the truck could have crossed the center line.

The last assignment of error by appellant is that the trial court erred in allowing Danny Morgan to testify that Denise Paskeuric told him that Koehnle had fallen out in front of Morgan as Morgan drove by.

Appellants argue that allowing such testimony violates Minn.R.Evid. 613(b) on the ground that a non-party witness cannot be impeached by a prior inconsistent statement unless the witness has been confronted with it and been given an opportunity to explain.

■ First of all, the statement had been admitted without objection by the testimony of Officer Haines. Moreover, on cross-examination, Ms. Paskeuric denied making such a statement. Appellant does not seem to object to the statement as hearsay although that it is what it is. Nevertheless, statements which are hearsay may be used for impeachment purposes. *Wild v. Rarig,* 302 Minn. 419, 458, 234 N.W.2d 775, 799 (Minn.1975).

■ Respondent argues that the statement is an exception to the hearsay rule anyway under Minn.R.Evid. 803(2) (excited utterance) or pursuant to Minn.R.Evid. 801(d)(1)(D) (statements describing an event while perceiving the event or immediately thereafter). Although we are less than persuaded that this is an excited utterance, 801(d)(1)(D) seems applicable and clearly the statement is proper as impeachment.

■ The appeal by Ettinger is on a collateral issue relating to indemnification under a service contract with Pinto. The semi-tractor was owned by Ettinger and supplied along with defendant Morgan to Pinto pursuant to a service contract. Paragraph 10 of the contract requires Ettinger to indemnify and save Pinto harmless from any and all costs, expenses, or losses caused by Ettinger or its agents. Pinto claims that, pursuant to this contract, Ettinger is required to pay Pinto's attorney's fees. We agree.

The language of the contract seems to be clear and unambiguous. Ettinger has argued that because Pinto is required under ICC Regulations to procure liability insurance, that somehow their obligation under the contract no longer exists. Paragraph 9 of the contract in fact requires Pinto to carry liability insurance. It certainly wasn't the intent of the parties that paragraph 9 nullify paragraph 10. Paragraph 9 demonstrates that Pinto has not abrogated its responsibility to the public imposed upon it by the ICC.

Also the right to indemnity, whether based on common law principles or an expressed contractual provision, has been consistently held to include reasonable attorney's fees. *Northern Welding Co. v. Jordan,* 150 Minn. 12, 184 N.W. 39, 40 (Minn.1921); *O'Connell v. Jackson,* 273 Minn. 91, 96, 140 N.W.2d 65, 69 (Minn. 1966). In *Northern Welding* the court construed the language of indemnity wherein the indemnitor promised to "save [the indemnitees] harmless from any and all claims or damage suits" to include the indemnitees' claim for attorney's fees despite the absence of a specific reference to them. *Id.* 150 Minn. at 14, 184 N.W. at 40.

## DECISION

Affirmed.