John D. LARSON, et al., Appellants,

v.

ANDERSON, TAUNTON & WALSH, INC., d.b.a. Tom & Bill's Skylark Red Owl, Respondents.

No. C3-85-562.

Court of Appeals of Minnesota.

Dec. 31, 1985.

Review Denied Mar. 14, 1986.

Juan A. Alsace, Montevideo, for appellants.

Joe E. Thompson, Willmar, for respondents.

Heard, considered, and decided by RANDALL, P.J., and PARKER and SEDGWICK, JJ.

## OPINION

RANDALL, Judge.

Appellants, John and Nanette Larson, sued respondent, Red Owl, for personal injuries caused when a Red Owl truck driven by Red Owl's employee, Paul Adams, tipped over during a windstorm and collided with appellants' car. Adams was killed and the appellants sustained personal injuries. Red Owl counterclaimed for property damage, but later dismissed its counterclaim.

The case was tried to a jury, which found neither party at fault. On appeal appellants argue that numerous evidentiary errors by the trial court justify reversal of the trial court's post-trial order denying appellants' motion for a new trial. We affirm.

## FACTS

The accident occurred on September 12, 1982. Appellants were westbound on Highway 7, traveling from Minneapolis to Montevideo. John Larson was driving and his wife Nanette was a passenger. It was raining and stormy. At the intersection of Highway 7 and Township Road 55 in Carver County, appellant saw respondents' semi tractor-trailer fishtail from the eastbound lane and swing four to five feet into the westbound lane.

Appellant slowed down as he approached the semi. The semi again fishtailed, tipped, and slid on its side into the westbound lane. Appellant slowed, applied his brakes, but was unable to stop in time to avoid colliding with the semi. The parties disagree as to who hit whom.

The semi driver, Adams, was killed. Mrs. Larson was cut above her left eye, received a puncture wound in her arm, and suffered a bump on her head. Mr. Larson's forehead was cut and he now has a scar. His arms were bruised. The Larsons sued respondents for personal injury.

At trial respondents' expert, meteorologist Bruce Watson, testified that on the day of the accident thunderstorms were present in the area, together with rotational winds of 90 miles per hour, constituting a "mini tornado."

Over appellants' objection, Adrid Hagberg's deposition was read into the record. Hagberg, 81 years old, was a passenger in John Skalberg's car, which was behind appellants' car at the time of the accident.

Appellants' attorney informed respondents' attorney, several days before trial, that Hagberg was moving to Arizona and that his deposition would be read in place of live testimony. By agreement of the parties, Hagberg's deposition was read during presentation of appellants' case in chief. Appellant objected, based on lack of foundation, to admission of Hagberg's testimony that Adams could have done nothing to avoid the accident. The trial court overruled the objection.

Following the reading of Hagberg's deposition into the record, appellants moved for a mistrial based on their contention that Hagberg's opinion was prejudicial and a thinly disguised opinion on the ultimate fact question. Appellants raised the same objections to similar testimony by Skalberg and Trooper McGovern, the investigating officer.

Appellants objected to testimony of respondents' expert, Meteorologist Bruce Watson. Appellants attacked Watson's qualifications, claiming that since Watson had not been in the area the day of the accident, his testimony lacked proper foun-

dation. They further objected to Watson's relying solely on meteorological reports as the basis for his testimony.

The trial court refused to admit testimony by appellants' expert, Harold B. Clayton, a certified director of trucking safety, that the accident was avoidable and that Adams could have done specific things to prevent the accident. The trial court also sustained objections to appellants' attempts to elicit Clayton's reconstruction of the accident. Clayton was allowed to testify to other matters, including safety procedures involving large trucks.

At the close of respondents' case, appellant moved for directed verdict on the question of Mr. Larson's negligence. The court denied the motion and submitted Larson's comparative negligence to the jury.

## ISSUES

1. Did the trial court err in admitting the deposition of a witness who was unavailable for trial?

2. Did the trial court err in admitting lay opinion testimony of respondents' witnesses on the issue of avoidability?

3. Did the trial court err in admitting testimony of respondents' expert witness?

4. Did the trial court err in excluding testimony of appellants' expert witness?

5. Did the trial court err in failing to grant appellants' motion for a directed verdict on Larson's contributory negligence?

6. Did the trial court err in denying appellants' summary judgment motion?

7. Was respondents' closing argument improper, warranting a new trial?

8. Did the trial court err in instructing the jury on the emergency rule?

9. Did the trial court err in refusing to grant a judgment notwithstanding the verdict?

## ANALYSIS

### I.

*Deposition Testimony*

■ Appellants claim there is a difference between a "discovery deposition" and a deposition done when a witness is unavailable for trial. They claim their original attorney conducted only a cursory deposition of Hagberg, assuming he could cross-examine Hagberg at trial to demonstrate Hagberg's limited ability to observe events.

Appellants cite no cases which accord different treatment to a "discovery deposition" as opposed to a deposition done to procure testimony of a witness unavailable for trial, absent an agreement by the parties to limit use of depositions to discovery and to mutually agree to produce their witnesses for live testimony.

Use of depositions at trial is governed by Minn.R.Civ.P. 32.01:

At the trial * * * any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, and subject to the provisions of Rule 32.02, may be used against any party who was present or represented at the taking of the deposition * * *

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(b) that the witness is at a distance greater than 100 miles from the place of trial or hearing, or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition.

Appellants do not allege that respondents procured Hagberg's absence. Moreover, appellants exercised their right to object to admission of the deposition testimony, allowed under Minn.R.Civ.P. 32.02, which states:

Subject to the provisions of Rules 28.02 and 32.04(3), objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of evidence if the witness were then present and testifying.

Appellants argue that, under *Krech v. Erdman*, 305 Minn. 215, 217–218, 233

N.W.2d 555, 557 (1975), respondents have a duty to apprise appellants of changes in circumstances which make it necessary to call witnesses. *Krech* deals with suppression of testimony of expert witnesses not disclosed prior to trial and is not applicable here.

Appellants also cite *Reikow v. Bituminous Construction Co., Inc.,* 302 Minn. 316, 224 N.W.2d 921 (1974). In *Reikow,* plaintiff subpoenaed a witness whom defendant wished to question. Plaintiff did not need the witness' testimony and discharged him. Defendants had not subpoenaed the witness. The court held that although counsel has a duty to make witnesses available for trial, if defendants had wanted this witness' testimony, they should have subpoenaed him. Appellants did not subpoena Hagberg. Hagberg was legitimately an out-of-state witness at the time of the trial, and it was not error for the court to allow the use of his deposition at trial.

## II.

*Lay opinion evidence*

■ Appellants' claim allowing Hagberg's and Skalberg's testimony that Adams could not have avoided the accident was prejudicial to their case and lacked foundation. Appellants also claim that the lay opinion was an inadmissible "thinly disguised legal opinion" embracing the ultimate issue, Adams' negligence.

Evidentiary rulings are within the sound discretion of the trial court. *McGuire v. C. & L. Restaurant, Inc.* 346 N.W.2d 605, 615 (Minn.1984) (citations omitted), *Lines v. Ryan,* 272 N.W.2d 896, 902 (Minn.1978) (citations omitted).

Admission of lay opinion testimony is governed by Minn.R.Evid. 701 and 704. Rule 701 states:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding

of his testimony or the determination of a fact in issue.

Moreover, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Minn.R.Evid. 704.

The trial court, in its post-trial memorandum, noted that Hagberg's and Skalberg's testimony was helpful to the jury because the men were eyewitnesses to the accident and their testimony was based on first-hand knowledge. The court noted that the witnesses did not give a legal conclusion, each merely testified that, based on their experience, Adams could have done nothing to avoid the accident. The testimony of the two witnesses as to what they perceived is clearly admissible, and appellant does not challenge their perceptions, just their conclusion that the accident was unavoidable. The admission of this conclusion is questionable, but once the trial court in its discretion determined that their opinion was rationally based on a perception, we do not find reversible error as a matter of law. The opinions of the two lay witnesses, although loose, fit under Rules 701 and 704.

Appellants also dispute respondents' claim that Hagberg was an eyewitness to the accident. They claim Hagberg was looking at the trailer, not the cab, when the accident occurred. Appellant's objection goes to weight, not admissibility.

## III.

*Expert opinion testimony*

■ Trooper McGovern, the investigating officer and an accident reconstruction expert, testified over appellants' objection that "the truck was tossed to its side by a strong crosswind and slid out of control down the oncoming lane." Appellants claim this is an inadmissible opinion as to who was at fault, the ultimate issue in this matter. Appellant cites *Ramfjord v. Sullivan,* 301 Minn. 238, 246, 222 N.W.2d 541, 546 (1974) for the proposition that "it is clearly erroneous to admit into evidence the opinion of an investigative officer as to

which party is at fault." While *Ramfjord* stands for this proposition, Trooper Mc-Govern did not testify as to who was at fault. His testimony was his reconstruction of the accident based on his training and experience, and therefore admissible.

Appellants argue that McGovern's testimony lacked foundation and was hearsay because McGovern was not on the scene and had no personal knowledge of the accident, and was inadmissible because McGovern was never qualified as an expert.

A trial court has broad discretion with respect to the admission of an expert's opinion. *Wohlfeil v. Murray Machinery, Inc.*, 344 N.W.2d 869, 875 (Minn.Ct.App. 1984). Objections based on foundation "are committed to the sound discretion of the trial judge and will only be the basis for reversal where that discretion has clearly been abused." *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn. 1983). Furthermore, it is not necessary that an expert personally observe how a person was injured for his testimony to be admissible. His testimony must be based on facts sufficient to form an adequate foundation for an opinion and he should not be allowed to speculate. *Wohlfeil*, 344 N.W.2d at 874–75.

Minn.R.Evid. 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

McGovern was appellants' witness and appellants, on direct examination, elicited from McGovern testimony on the cause of the accident. They cannot complain because respondents followed up on that line of inquiry during cross-examination. The trial court did not abuse its discretion in admitting his testimony.

Meteorologist Watson was qualified as an expert. Appellants claim Watson's testimony lacked foundation because he was not present at the time of the accident. The trial court, within its discretion, found Watson qualified as an expert witness. Moreover, respondent had the opportunity to test Watson's credibility by cross-examination. *See* Minn.R.Evid. 705.

Appellants complain that Watson gave a different description of the weather that day than did farmers living in the area and that Watson did not view the storm first hand. Watson's testimony included interpretation of weather charts and maps.

Appellants challenge each of Watson's factual statements as contradicted by other witnesses. Appellants' criticism of Watson's testimony goes to weight, not admissibility. The court did not err in admitting this expert's testimony.

## IV.

### *Appellants' Expert Witness*

Through the testimony of safety expert Harry Clayton appellants attempted to rebut respondents' 'act of God' defense. According to appellant, Clayton would have testified on ways Adams could have avoided the accident. He also would have given accident reconstruction testimony.

Clayton was qualified as a safety expert but not as an accident reconstruction expert. The trial court sustained respondents' objections to any opinion by Clayton both on what Adams could have done to avoid the accident and on how the accident happened, ruling Clayton was unqualified to render an opinion concerning reconstruction of the accident and its causes. Clayton's testimony was limited to safety matters within the scope of his qualifications as a safety expert.

The question of sufficiency of foundation for opinion evidence is a matter within the sound discretion of the trial court. *Koehnle v. M.W. Ettinger, Inc.*, 353 N.W.2d 612, 615 (Minn.Ct.App.1984). "The determination of whether a witness is sufficiently qualified to testify as an expert is left to the sound discretion of the trial court, whose ruling will not be reversed unless it is based on an erroneous view of

the law or is clearly not justified by the evidence." *DeRemer v. Pacific Intermountain Express Co.*, 353 N.W.2d 694, 698 (Minn.Ct.App.1984) (citation omitted).

Here, where the court found that appellant's expert was not qualified as an accident reconstruction expert, we cannot say that the trial court abused its discretion in refusing to admit his testimony on how the accident might have happened. Because the trial court allowed into evidence opinions by respondents' lay witnesses on avoidability, the better practice here would be for the court to also be liberal with appellants' expert, but given the discretion of a trial court on evidentiary matters, we cannot say the court committed reversible error in partially restricting the scope of Clayton's testimony.

■ Appellants argue that the evidence should have been admitted under the doctrine of "curative admissibility" citing *McNab v. Jeppesen*, 258 Minn. 15, 102 N.W.2d 709 (1960) and *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377 (Minn. 1977). The doctrine was recently reaffirmed by this court:

> In order to be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) the original evidence must be inadmissible and prejudicial, (b) the rebuttal evidence must be similarly inadmissible, and (c) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence.

*Danielson v. Hanford*, 352 N.W.2d 758, 761 (Minn.Ct.App.1984) (quoting *Busch*, 262 N.W.2d at 387).

Appellants do not meet the initial threshold (a) since in this case the "original evidence" is the evidence presented by Hagberg, Skalberg and McGovern, all of which was not inadmissible but was ruled admissible by the trial court and that ruling upheld in this opinion.

Appellants argue that exclusion of Clayton's testimony, together with the other evidentiary errors appellants claim were committed by the trial court, entitle them to a new trial. "[B]efore an error in the exclusion of evidence may be grounds for a new trial, it must appear that such evidence might reasonably have changed the result of the trial if it had been admitted." *Jenson*, 335 N.W.2d at 725 (Minn.1983). We cannot say the trial court's refusal to admit part of Clayton's testimony was reversible error.

V.

*Motion for Directed Verdict*

■ Appellant John Larson claims that his motion for a directed verdict on his contributory negligence should have been granted as no evidence contradicted his testimony that he did everything he could to avoid the accident and that all evidence established that he was free of fault.

In a motion for a directed verdict the court must view the evidence as a whole in the light most favorable to the non-moving party. Such motions should be granted "only in those unequivocal cases where, in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence.

*American Machine and Tool Co., v. Strite-Anderson Manufacturing*, 353 N.W.2d 592, 598 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984) (citations omitted).

Although the issue was submitted to the jury and the jury found Larson free of fault, appellants claim they were prejudiced by being denied a directed verdict because the jury wasted time considering Mr. Larson's negligence and was "distracted" from considering Adams' negligence.

The jury found Mr. Larson free of fault. We see no error nor even minimal prejudice in submitting to a jury the contributory negligence of both drivers in an accident where each side presented conflicting expert and lay testimony on causation.

## VI.

### Motion for Summary Judgment

■ Appellants moved for summary judgment claiming that, as a matter of law, respondents could not prove their "act of God" defense, and that, therefore, Adams was negligent. Minn.R.Civ.P. 56.03 states:

Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is not genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

This court has held:

It is settled that a party who moves for summary judgment has the burden of proving the absence of any genuine issues of material fact, and that the non-moving party is entitled to the benefit of that view of the evidence most favorable to him.

*Ritter v. Mortenson Co.*, 352 N.W.2d 110, 112 (Minn.Ct.App.1984).

The cause of the accident was a genuine issue of material fact and properly submitted for trial. The court properly denied the motion for summary judgment.

## VII.

### Jury Instructions

■ Appellants claim the court erred in instructing the jury on the emergency rule. The trial court instructed the jury as follows:

That a person confronted with an emergency through no negligence of his own who, in an attempt to avoid the danger, does not choose the best or the safest way, is not negligent.

Appellants claim this instruction is appropriate only when the defendant is free from negligence. They also claim the instruction is inconsistent with respondents' "act of God" defense.

The emergency rule does not contradict respondents' act of God defense, as appellants claim. Nor did the instruction require the court to determine, prior to submission of the case to the jury, that the respondent was not negligent. Determination of negligence was left to the jury.

The emergency rule instruction is appropriate "where the evidence would sustain a finding that one of the persons whose negligence will be submitted to the jury had been confronted with a sudden peril or emergency and acted under its stress." *Byrns v. St. Louis County*, 295 N.W.2d 517, 519 (Minn.1980).

Appellants do not argue that they were denied an instruction on their theory of the case. We find the emergency rule instruction within the trial court's discretion.

## VI.

### Closing Argument

■ Appellants argue that the following remarks made by respondent during closing argument were prejudicial and warrant a new trial:

"That God reached out of the sky on that day and said
'Paul, its your time to come.' "

"it wasn't (the Larson's) time. It was Paul's time."

"the accident happened because God said 'It's time' "

"(the wind) caught him, it pushed him, it carried him, it killed him"

"(the wind) moved to meet Paul * * * (he)never suspected it * * * and was killed"

"Paul Adams met his destiny"

"that if young Paul Adams had had the chance to (move into the opposing lane or traffic), thank God he didn't"

Granting a new trial is a drastic remedy "and rests largely in the discretion of the trial court, but when serious misconduct appears and prejudice is shown, it is an abuse of discretion not to grant a new trial." *Anderson v. Hawthorn Fuel Co.*, 201 Minn. 580, 584, 277 N.W. 259, 261 (1938). Here appellant failed to object to the respondents' remarks at trial and raised the objection for the first time in its

motion for a new trial. The court was within its discretion in denying appellants' motion.

## IX.

*Motion for a New Trial*

██ Appellants argue that the jury's finding that Adams was not negligent was unjustified by the evidence and contrary to law. They argue that the evidence conclusively established Adams' negligence and that "act of God" is no defense to negligence. We disagree.

> A motion for a new trial made upon the ground that the jury verdict is not supported by the evidence should be granted only in cases where the preponderance of the evidence clearly suggests jury mistake, improper motive, bias, or caprice.

*Newmaster v. Mahmood,* 361 N.W.2d 130 (Minn.Ct.App.1985) (citing *Conover v. Northern States Power Co.,* 313 N.W.2d 397, 408 (Minn.1981)). There is sufficient evidence to support the jury's verdict and we will not disturb it on appeal.

## DECISION

The trial court did not err in admitting the deposition of a witness who was unavailable for trial, in admitting lay opinion testimony of respondents' witnesses, in admitting testimony of respondents' expert, and refusing to admit testimony of appellants' expert.

The trial court did not err in failing to grant appellants' motion for a directed verdict on John Larson's contributory negligence, and did not err in denying appellant's summary judgment motion on Adam's negligence.

Appellant did not properly preserve for appeal his objections to respondents' closing argument. The trial court did not err in instructing the jury on the emergency rule, and the verdict is supported by the evidence.

Affirmed.